UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(MIAMI DIVISION)

Case No.: 08-22572-CIV COOKE/BANDSTRA

WATERFORD TOWNSHIP GENERAL
EMPLOYEES RETIREMENT SYSTEM,

                Plaintiff,

v.

BANKUNITED FINANCIAL CORPORATION,
et al.,

                Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
OF GEORGIA MUNICIPAL EMPLOYEE BENEFIT SYSTEM
RETIREMENT FUND FOR APPOINTMENT AS LEAD PLAINTIFF
AND  APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL**

**PRELIMINARY STATEMENT**

The above-captioned action is a securities class action lawsuit that has been brought against BankUnited Financial Corporation ("BankUnited" or the "Company") and three of its officers and/or directors alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder.  This action was commenced in this jurisdiction on September 16, 2008.  Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), on September 16, 2008, the first notice that a class action had been initiated against Defendants was published over a widely circulated national business-oriented wire service advising members of the proposed class of their right to move the Court to serve as lead plaintiff

within 60 days (by November 17, 2008). *See* Chitwood Decl. at Exh. B.[1] The Georgia Municipal Employee Benefit System ("GMEBS") Retirement Fund is a class member (*see* Chitwood Decl. at Exh. A) and is timely filing this motion within the 60 day period following publication of the September 16, 2008 notice pursuant to Section 21D of the Private Securities Litigation Reform Act of 1995 ("PSLRA").

GMEBS has suffered losses totaling approximately $906,968 as a result of its investment in securities of BankUnited.[2] Accordingly, GMEBS is believed to have suffered the largest and most significant financial loss of any movant and, as such, has the largest financial interest in the outcome of this litigation. *See* Chitwood Decl. at Exh. A. In addition, Movant has submitted a sworn certification demonstrating its desire to serve as lead plaintiff. *See* Chitwood Decl. at Exh. A. Movant also satisfies each of the requirements of the PSLRA and Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and thus is presumptively the most adequate plaintiff and should be appointed as Lead Plaintiff.

As the most adequate plaintiff as defined by the PSLRA, GMEBS respectfully submits this memorandum of law in support of its motion, pursuant to § 21D of the Exchange Act, 15 U.S.C. § 78u-4 (a)(3)(B), as amended by the PSLRA, for an order: (1) appointing Movant to serve as Lead Plaintiff pursuant to the Exchange Act of a proposed class of persons or entities including those who purchased or otherwise acquired BankUnited securities between April 18,

---

[1] The notice is attached to the Declaration of Martin D. Chitwood in Support of the Georgia Municipal Benefit System Retirement Fund's Motion for Appointment As Lead Plaintiff and Approval Of Lead Plaintiff's Selection Of Lead Counsel (the "Chitwood Decl."), filed simultaneously herewith.

[2] The losses suffered by Movant are not the same as its legally compensable damages, measurement of which is often a complex legal question which cannot be determined at this stage of the litigation. The approximate losses can, however, be determined from the certification required under Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(a)(2)(A), and based upon reference to information concerning the current market for the Company's securities.

2006 and June 18, 2008, inclusive (the "Class Period"); and (2) approving its selection of Chitwood Harley Harnes LLP ("Chitwood Harley Harnes") as Lead Counsel, and The Kopelowitz Ostrow Firm, P.A. as its Local Counsel.

## STATEMENT OF FACTS[3]

Defendant BankUnited is the savings and loan holding company for BankUnited FSB, which is the largest banking institution headquartered in Florida. The Company offers residential and commercial mortgage services, working capital loans and lines of credit, private banking and investment services and cash management for businesses. BankUnited was founded in 1984 and operates over 80 full-service branches in Florida.

The Class Period begins on April 18, 2006, when BankUnited disclosed a dramatic increase in originations of option ARM residential loans from the same period in 2005. During the Class Period, the Company continued to dramatically increase the origination of these types of risky loans, including to borrowers who could not absorb the adjustments to interest rates that would occur under the loan terms. Moreover, BankUnited concentrated much of its lending on poorer neighborhoods based on "stated income," low documentation and other extremely risky lending practices. Throughout the Class Period, Defendants issued materially false and misleading statements to the public regarding the state of its capital reserves, its underwriting standards, its lending practices (by claiming that it did not engage in the "subprime" market), and the quality of its portfolio.

In May 2008, news about BankUnited's loan losses began to enter the market, and its stock price began to fall. On May 12, 2008, the Company filed its 10Q for the quarter ended March 31, 2008, in which it revealed, among other things, the dramatic increase in the loan loss

---

[3] These facts were derived from the allegations contained in the Class Action Complaint on file and other publicly available information.

provision from $4 million for the quarter ended March 31, 2007 to $98 million for the quarter ended March 31, 2008. Defendants blamed these losses on market conditions and continued falsely to reassure the market that its underwriting practices were conservative, its capital position was sound and its portfolio was safe. As a result of the partial disclosure on May 12, 2008, the Company's stock price declined 9.5% in just two trading days.

On June 18, 2008, BankUnited unexpectedly announced the public offering of its Class A common stock in an effort to raise $400 million, which it stated it intended to use for general corporate purposes and contributing capital to its bank subsidiary. In doing this, Defendant Camner agreed to accept reduced voting power. This disclosure caused the stock price to drop a massive 44% in only two trading days on extremely heavy volume.

Two days after the initial complaint was filed in this action, BankUnited disclosed that it and its banking subsidiary, BankUnited FSB, had consented to Cease and Desist Orders ("Orders") issued by the Office of Thrift Supervision ("OTS"). The Orders were based on the OTS' January 31, 2008 Report of Examination of the Holding Company. The OTS found, in part, that BankUnited had engaged "in unsafe and unsound practices" which resulted in BankUnited FSB "being in an unsatisfactory condition primarily due to the rising delinquencies and defaults in its payment option arm loan portfolio, a significant portion of which was originated on a 'stated income' basis." Additionally, the Order gives the Company until December 31, 2008 to meet certain capital-to-risk ratios. BankUnited may no longer originate loans that provide for, or may result in, negative amortization, including option ARM loans. The Company also may no longer originate loans under reduced documentation and no documentation loan programs.

## ARGUMENT

**I.     GMEBS SHOULD BE APPOINTED LEAD PLAINTIFF**

Movant should be appointed Lead Plaintiff because it has complied with all of the PSLRA's requirements, has demonstrated the largest financial interest in this litigation, and otherwise meets the relevant requirements of Fed. R. Civ. P. 23. As the presumptive Lead Plaintiff, Movant's selection of Chitwood Harley Harnes to serve as Lead Counsel, pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), should be approved by the Court.

**A.     The Procedural Requirements Pursuant To The PSLRA**

The PSLRA sets forth a detailed procedure for the selection of a lead plaintiff to oversee securities class actions brought pursuant to the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3). First, the plaintiff who files the initial action must, within 20 days of filing the complaint, publish a notice informing Class members of their right to seek appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Plaintiff in the first-filed action published a notice on *Business Wire* on September 16, 2008. *See* Chitwood Decl. at Exh. B.[4] This notice indicated that applications for appointment as lead plaintiff were to be made within 60 days of the September 16, 2008 notice (November 17, 2008).

Second, within 60 days after publication of the required notice, any member or members of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in this action. 15 U.S.C. § 78u-4(a)(3)(A) & (B). Next, within 90 days after publication of the initial notice of pendency, the Court shall appoint as lead

---

[4] *Business Wire* is a suitable vehicle for meeting the statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire service." *See In re USEC Sec. Litig.*, 168 F. Supp. 2d 560, 567 (D. Md. 2001); *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996); *Lax v. First Merchs. Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *4 (N.D. Ill. Aug. 11, 1997).

5

plaintiff the movant that the Court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B)(i). In determining who is the "most adequate plaintiff," the Exchange Act provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that
>
> > (aa) has either filed the complaint or made a motion in response to a notice . . .
> >
> > (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> >
> > (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure [pertaining to class actions].

15 U.S.C. § 78u-4(a)(3)(B)(iii); *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 502 (S.D. Fla. 2002); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 402-404 (S.D.N.Y. 2004).

### B.    GMEBS Is "The Most Adequate Plaintiff"

#### 1.    GMEBS Has Made A Motion For Its Appointment As Lead Plaintiff.

The time period in which class members may move to be appointed as Lead Plaintiff in this case expires on November 17, 2008. Movant's application, filed on November 17, 2008, thus is timely. Movant has reviewed the complaint and is willing to serve as the representative party on behalf of the Class. *See* Chitwood Decl. at Exh. A (certification of Movant). In addition, GMEBS has selected and retained competent counsel to represent it and the Class as Lead Counsel. *See* Chitwood Decl. at Exh. C (attaching firm résumé of Chitwood Harley Harnes). Accordingly, Movant has satisfied the individual requirements of 15 U.S.C. § 78u-4(a)(3)(b) and is entitled to have its application for appointment as Lead Plaintiff and its selection of Chitwood Harley Harnes as Lead Counsel approved by the Court.

### 2.     GMEBS Has The Largest Financial Interest.

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall appoint as lead plaintiff(s) the Class member(s) who represent(s) the largest financial interest in the relief sought by the action who is otherwise qualified. *See Eagle Build. Techs.,* 209 F.R.D. at 502; *In re Cendant Corp. Litig.* 264 F.3d 201, 262 (3d Cir. 2001). To its knowledge, GMEBS has sustained more losses than any other movant under both the First-In-First-Out (FIFO) and Last-In-First-Out Methodology ("LIFO").[5] *See* Chitwood Decl. at Exh. A. As a result, GMEBS has the largest known financial interest in the relief sought by the Class.

### 3.     GMEBS Otherwise Satisfies Rule 23.

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing a large financial interest in the outcome of the litigation, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in

---

[5] Under the FIFO method, the first-purchased shares are offset against first-class period sales. *See e.g., Goplen v. 51job, Inc.,* No. 05 Civ. 0769, 2005 U.S. Dist. Lexis 15059, *8 (S.D.N.Y. July 26, 2005). The LIFO method matches sales transactions to most recent purchses and is generally regarded by many courts as more accurately reflecting a movant's financial stake in the case. Under the PSLRA, for purchase transactions that are not matched to sell transactions that occurred during the Class Period, the 90-day average hold price is applied.

deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a) and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *Miller v. Dyadic Int'l, Inc.,* 2008 U.S. Dist. LEXIS 32271, at *18 (S.D. Fla. Apr. 18, 2008); *Fischler v. AmSouth Bancorporation*, No. 96-1567-CIV-T-17A, 1997 WL 118429, at *2-3 (M.D. Fla. Feb. 6, 1997); *Lax*, 1997 WL 461036, at *6. Movant GMEBS satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as Lead Plaintiff.

### a.  **GMEBS Fulfills The Typicality Requirement.**

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class.  Generally, the typicality requirement is satisfied if the claims of the named plaintiff have the same essential characteristics as the claims of the class at large.  *See Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985).  *See also Rossini v. Ogilvy & Mather Inc.*, 798 F.2d 590, 598 (2d Cir. 1986); *Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 412; *Babcock v. Computer Assocs. Int'l Inc.*, 212 F.R.D. 126, 130 (E.D.N.Y. 2003).  The requirement that the proposed class representative's claims be typical of the claims of the class does not mean, however, that the claims must be identical.  *See In re MIVA, Inc.*, 2008 U.S. Dist. LEXIS 21108, at *10 (M.D. Fla. Mar. 12, 2008); *see also Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 412; *Philips v. Joint Legislative Comm. On Performance and Expenditure Review*, 637 F.2d 1014, 1024 (5th Cir. 1981), *cert. denied*, 456 U.S. 971 (1982).  Typicality does not require that there be no factual differences between the class representatives and the class members because the generalized nature of the claims asserted determines whether the class representatives are typical. See *Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass 1988) ("With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between their claims and those

of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent [class] members.") (citations omitted). Because Movant seeks to prove that Defendants "committed the same unlawful acts in the same methods against an entire class . . . all members of this class have identical claims," and therefore, the typicality requirement of Rule 23(a)(3) is satisfied. *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

Movant GMEBS seeks to represent a class of purchasers of BankUnited securities which have identical, non-competing and non-conflicting interests. GMEBS satisfies the typicality requirement because, just like all other Class members, it: (1) purchased or acquired BankUnited securities during the Class Period; (2) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) suffered economic loss thereby. Thus, Movant's claims are typical of those of other Class members since its claims and the claims of other Class members arise out of the same course of events.

### b. GMEBS Fulfills The Adequacy Requirement.

Under Rule 23(a)(4), the representative parties must fairly and adequately protect the interests of the class. This requirement is met if it appears that (1) the named plaintiff has interests in common with, and not antagonistic to, the class' interests; and (2) the plaintiff's attorneys are qualified, experienced and generally able to conduct the litigation. *See, e.g., Kilpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 800 (3d Cir. 1995). *See also Babcock*, 212 F.R.D. at 131 (citation omitted) (stating that the standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflict between the proposed Lead Plaintiff

9

and the class members; and (2) the class representatives' choice of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation).

As detailed above, GMEBS is an adequate representative of the Class because it shares common questions of law and fact with the members of the Class, and its claims are typical of the claims of other Class members. As evidenced by its injuries from purchasing and/or acquiring BankUnited stock at prices artificially inflated by Defendants' materially false and misleading statements, Movant's interests are aligned with the interests of the members of the Class, and there is no evidence of any antagonism between Movant's interests and those of the other members of the Class.

Further, GMEBS has already taken significant steps demonstrating that it has protected and will protect the interests of the Class: it has executed a certification detailing its Class Period transactions and expressing its willingness to serve as lead plaintiff; it has moved this Court to be appointed as lead plaintiff in this action; and it has retained competent and experienced counsel who, as shown below, will be able to conduct this complex litigation in a professional manner. *See generally Lax,* 1997 WL 461036, at *5-7. Furthermore, GMEBS has the largest known financial interest, which gives it "an incentive to prosecute the action vigorously." *Ferrari v. Gisch*, 225 F.R.D. 599, 607 (C.D. Cal. 2004). Accordingly, Movant, in addition to having the largest financial interest, also *prima facie* satisfies the typicality (Rule 23(a)(3)) and adequacy (Rule 23(a)(4)) requirements of Rule 23 and therefore satisfies all elements of the Exchange Act's prerequisites for appointment as lead plaintiff in this action pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii).

Moreover, the legislative history of the PSLRA demonstrates that Congress intended to encourage large institutional investors, especially public pension funds, to serve as lead plaintiff.

Courts have recognized that public pension funds, such as GMEBS, are particularly favored as lead plaintiff: "The Court also notes that the members of the aptly-named Pension Fund Group are ***public institutional investors***, which comports with ***the PSLRA's expressed preference for such lead plaintiffs***." *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 305 (S.D. Ohio 2005) (emphasis added); *see also Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 639 (D.N.J. 2002) (court appointed public pension fund over investment management company with larger losses because public pension fund "possesses the financial sophistication and expertise to ensure that the litigation will proceed in the best interests of the Class"). As Congress noted in the Statement of Managers of the PSLRA:

> Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.

H.R. REP. NO. 104-369, at 34 (1995) (Conf. Rep.). Similarly, the Senate Report on the PSLRA states in pertinent part:

> The Committee believes that increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts.
>
> Institutions with large stakes in class actions have much the same interest as the plaintiff class generally. . . .

S. REP. NO. 104-98, at 11 (1995). Furthermore, a public pension fund is "accustomed to acting in the role of a fiduciary, and its experience with investing and financial matters will only benefit the class." *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997). As a public pension fund, GMEBS is the prototypical lead plaintiff under the PSLRA because it has a significant interest in seeking financial redress and will represent the interests of the Class effectively by directing and controlling the litigation.

Finally, appointing a single institution as lead plaintiff and a single law firm as lead counsel will promote the efficient conduct of this litigation by reducing the complications that accompany multiple layers of attorneys and plaintiffs.  *See generally In re Enron Corp. Sec., Derivative & Erisa Litig.*, No. MDL-1446, 2004 WL 405886, at *3 n.12 (S.D. Tex. Feb. 25, 2004).

## II.   THE COURT SHOULD APPROVE GMEBS' CHOICE OF COUNSEL

Pursuant to 15 U.S.C § 78u-4(a)(3)(B)(v), the lead plaintiff shall, subject to Court approval, select and retain counsel to represent the Class.  The Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).  Movant has selected and retained Chitwood Harley Harnes LLP ("Chitwood Harley Harnes") to serve as Lead Counsel for the Class.  Chitwood Harley Harnes has extensive experience in prosecuting complex securities actions and is well qualified to represent the Class.  *See* Chitwood Decl. at Exh. C.  In its home jurisdiction, the Northern District of Georgia, Chitwood Harley Harnes leads approximately 95% of all securities class actions.  The firm has served as lead or co-lead counsel in many high profile class actions throughout the country, recovering billions of dollars for investors and others harmed by corporate mismanagement and has forced a number of important corporate reforms.  For example, as co-lead counsel in *Bank of America Sec. Litig.*, MDL No. 1264 (E.D. Mo.), a case presided over by the District Court for the Eastern District of Missouri, Chitwood obtained a $490 million recovery; as co-lead counsel in *Oxford Health Plans, Inc. Sec. Litig.*, MDL No. 1222 (CLB) (S.D.N.Y.), the firm secured a $300 million recovery in the Southern District of New York; and as sole lead counsel in *Providian Financial Corp. Sec. Litig.*, No. C-01-3952-

CRB (N.D. Cal.), Chitwood obtained a $65 million recovery for the class in a case filed in the Northern District of California.[6]

Finally, GMEBS' choice of local counsel, the Miami, Florida based Kopelowitz Ostrow Firm, P.A., specializes in complex litigation and has experience prosecuting securities and class actions in both the state and federal courts throughout the country. *See* Chitwood Decl. at Exh. D. Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation.

Because there is nothing to suggest that Movant or its counsel will not fairly and adequately represent the Class, or that Movant is subject to unique defenses, this Court should appoint the GMEBS as Lead Plaintiff and approve its selection of Chitwood Harley Harnes as Lead Counsel and The Kopelowitz Ostrow Firm, P.A. as Local Counsel for the Class.

## CONCLUSION

For the foregoing reasons, Movant satisfies the requirements of the PSLRA for the appointment as Lead Plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B). Movant respectfully requests that the Court: (a) appoint GMEBS as Lead Plaintiff; and (c) approve Chitwood Harley Harnes as Lead Counsel and The Kopelowitz Ostrow Firm, P.A.as Local Counsel for the Class.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(3)

In accordance with S.D. Fla. Local Rule 7.1(A)(3), the undersigned counsel for movant certifies that they have conferred and/or made a reasonable effort to confer with all parties or

---

[6] Additional significant recoveries obtained by Chitwood Harley Harnes for shareholders include: *In re 1996 Medaphis Corp. Sec. Litig.*, Civil Action No. 1:96-CV-2088-TWT (N.D. Ga.) ($72.5 million); *In re JDN Realty Corp. Sec Litig.*, Civil Action No. 1:00-CV-0396-RWS (N.D. Ga.) ($47 million); and *Carpenters Health & Welfare Fund, et al. v. The Coca-Cola Co., et al.*, Civil Action No. 1:00CV-2838-WBH (N.D. Ga.) ($137.5 million).

non-parties who may be affected by the relief sought in this motion. Specifically, on November 14, 16 and 17, 2008, counsel for GMEBS communicated with counsel at the firm of Coughlin Stoia Geller Rudman & Robbins, LLP (counsel for the initial named Plaintiff, Waterford Township General Employees Retirement System) regarding this motion.  On November 17, 2008, counsel for GMEBS communicated with Dennis A. Nowak of Tew Cardenas LLP (counsel for Defendants Bankunited Financial Corporation, Alfred R. Camner, Ramio A. Oritz, and Humberto L. Lopez), regarding this Motion.  None of these communications with above counsel resolved the issues that are the subject of this motion. At this stage, counsel for GMEBS does not know which other individuals and/or entities plan to move for appointment as lead plaintiff; counsel will not have this information until after all of the movants have filed their motions.  *See* 15 U.S.C. § 78u-4, *et seq.*

DATED:	November 17, 2008.
	Fort Lauderdale, FL

 /s/ Jeffrey M. Ostrow
Jeffrey M. Ostrow, Fla. Bar No. 121452
E-mail:  ostrow@tkolaw.com
**The Kopelowitz Ostrow Firm, PA (TKO)**
200 SW 1st Avenue, 12th Floor
Fort Lauderdale, Florida 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300

**Movant's Local Counsel**

**Chitwood Harley Harnes LLP**
Martin D. Chitwood
James M. Wilson, Jr.
Robert W. Killorin
Ze'eva Kushner Banks
2300 Promenade II
1230 Peachtree Street, NE
Atlanta, Georgia 30309
Tel:  (404) 873-3900
Fax:  (404) 876-4476

**Proposed Lead Counsel**

14

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the "**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF GEORGIA MUNICIPAL EMPLOYEE BENEFIT SYSTEM RETIREMENT FUND FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL**" with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

**Counsel for Plaintiffs:**

Jack Reise
JReise@csgrr.com
Paul J. Geller
PGeller@csgrr.com
**Coughlin Stoia Geller Rudman
   Robbins LLP**
120 East Palmetto Park Road, Ste. 500
Boca Raton, FL 33432
561-750-3000
561-750-3364 (fax)

**Counsel for Defendants:**

Dennis A. Nowak - dn@tewlaw.com
C. Thomas Tew - tt@tewlaw.com
Jeffrey A. Tew - jt@tewlaw.com
**Tew Cardenas LLP**
Four Seasons tower
1441 Brickell Avenue, 15th Floor
Miami, FL 33131
(305) 536-1112
(305) 536-1116 (fax)

Copies were also served by depositing same in the U.S. Mail with sufficient First-Class postage affixed thereon to ensure delivery, addressed as follows:

**Counsel for Plaintiffs:**

Darren J. Robbins - darrenr@csgrr.com
Matthew P. Montgomery - mattm@csgrr.com
**Coughlin Stoia Geller Rudman**

**Robbins LLP**
655 West Broadway, Suite 1900
San Diego, CA 92101
619-231-1058
619-231-7423 (fax)

Roger B. Greenberg - rgreenberg@schwartz-junell.com
**Schwartz, Junell, Greenberg & Oathout, LLP**
Two Houston Center
909 Fannin, Suite 2700
Houston, TX 77010
713-752-0017
713-752-0327 (fax)

      /s/     Jeffrey M. Ostrow