**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 08-CIV-22572-COOKE/BANDSTRA

In re BankUnited Securities Litigation

LOUISIANA MUNICIPAL POLICE EMPLOYEES
RETIREMENT SYSTEM AND THE OKLAHOMA
POLICE PENSION AND RETIREMENT SYSTEM,

       Plaintiffs,

-vs-

ALFRED R. CAMNER, RAMIRO A. ORTIZ
and HUMBERTO L. LOPEZ,

       Defendants.

_____/

**ALFRED CAMNER'S MOTION TO DISMISS**
**AND INCORPORATED MEMORANDUM OF LAW**

      Defendant, ALFRED R. CAMNER, pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act of 1995 ("Reform Act"), moves to dismiss the pending Consolidated Amended Class Action Complaint (DE 67) ("Complaint") with prejudice. Defendant Camner also relies on and incorporates by reference the parallel Motion filed by Defendants Ortiz and Lopez (DE 86).

**INTRODUCTION**

      BankUnited was a casualty of the economic downturn of 2007 and especially 2008, in which real estate throughout the Bank's lending areas was particularly hard hit. The business plan of BankUnited, as was disclosed in all of its public filings, focused on residential home mortgages. Its presence in this market was consistent with the public policy of supporting home ownership and the "ownership society" as embraced by all political parties. Furthermore, the

loans of BankUnited, which were given to borrowers with excellent credit scores and secured by collateral (individual homes) valued well above loaned amounts, appeared well-positioned to limit default, and in case of default to have adequate collateral.  The absence of concentration of risk on a few key borrowers or projects tended to ensure the safety of the Bank.  While many of BankUnited's loans were adjustable in their rates, based on the movement of an interest rate index, and they often allowed an individual buyer a limited option to forego certain payments resulting in negative amortization for a period of time, these features were desirable to consumers and well within the range of permissible business judgment.

It was only a catastrophic downturn in real estate values in a recession, combined with the unparalleled magnitude of the accompanying wave of defaults by individual homeowners, that led to the failure of BankUnited.  Unlike larger banks such as Citibank and Bank of America, which were deemed "too big to fail," and received billions of dollars in federal bailout dollars, BankUnited received no such funds.  When BankUnited's customers defaulted and the value of its collateral was written down as a result of the real estate crisis, the Bank became undercapitalized under accounting rules, and was eventually taken over as insolvent by the FDIC.  All of the holding company's stockholders, including Defendant Camner, suffered losses as a result.  These regrettable consequences of the 2008 recession, however, do not amount to fraud, which the Plaintiffs do not viably or credibly allege.

The Plaintiffs' Complaint contains conclusory and oft-repeated allegations that Camner fraudulently concealed BankUnited's exposure to risk on its real estate loans and fraudulently misled investors as to the Bank's appraisal and underwriting standards.   While there are allegations that Camner and others spoke well of the Bank's business practices, the Complaint falls far short in its allegations that Camner's statements were false and were believed, much less

2

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

known, to be so by Camner. Further, the substanceless assertions of the Complaint as to scienter fail to pass muster under either the Reform Act or Fed. R. Civ. 9(b).  The Complaint does not allege that Mr. Camner had any reason to believe that the appraisals and credit scores on which the Bank's underwriting was based were not accurate or reliable;  the Complaint does not allege that Mr. Camner had any special knowledge of the future which would tell him that loans made by BankUnited to thousands of individual homeowners with good credit scores would not been paid in according with their terms as they had been in the past; the Complaint does not allege that Mr. Camner believed or had any reason to believe that the accounting treatment of the Bank's loans, income and loan loss reserves was not in accordance with the governing GAAP principles; the Complaint does not allege that Mr. Camner directed or controlled the accounting treatment of any of these issues (notably, none of the Bank's accountants are defendants in this action); and the Complaint does not allege that Mr. Camner had any more ability to predict the unexpected downturn in the economy or its effect on BankUnited than anyone else.[1]  While BankUnited's real estate collateralized loans did carry with them risk in case of a real estate downturn, this risk was disclosed in the clearest terms.  The fraud claim made by Plaintiff is defective and should be dismissed as detailed below.

## THE REFORM ACT

The strict standards of the Reform Act require dismissal of the Complaint.  The United States Congress was deeply troubled by litigation practices such as the Complaint in this case – the filing of a securities fraud claim in the wake of any fall in stock price, even if all similar

---

[1] Anyone else, for that matter, including Citibank, Bank of America, the Secretary of the Treasury, the Chairman of the Federal Reserve Board, the Chairman of the Federal Deposit Insurance Corporation, 100 members of the Senate, and 435 Members of the House of Representatives – to name just a few.

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

companies suffered a similar drop because of market conditions.  As a result, in 1995, Congress passed the Private Securities Litigation Reform Act of 1995, Pub.L. 194-67, 109 Stat. 743, codified at 15 U.S.C. § 78u-4(b) ("Reform Act").  Congress passed the Reform Act "[a]s a check against abusive litigation by private parties." *Tellabs Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 313 (2007).  The Reform Act was "[d]esigned to curb perceived abuses of the § 10(b) private action – nuisance filings, targeting of deep-pocket defendants, vexatious discovery and manipulation by class action lawyers." *Id.* at 320 (internal quotations omitted).  "An important component of achieving this goal was structuring the legislation to permit the dismissal of frivolous cases at the earliest feasible stage of the litigation, thereby reducing the cost to the company, and by derivation, to its shareholders, in defending a baseless action." *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1278 (11th Cir. 1999)

Most importantly, the Reform Act raised the standard for pleading scienter.  "[A] plaintiff can no longer plead scienter generally." *Hubbard v. BankAtlantic Bancorp, Inc.*, 625 F. Supp. 2d 1267, 1280-81 (S.D. Fla. 2008).  The plaintiff must, for each alleged misrepresentation, "state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2) (emphasis added). "Moreover, the complaint must allege facts supporting a strong inference of scienter for *each defendant* with respect to *each violation.*" *Mizzaro v. Home Depot, Inc.,* 544 F.3d 1230, 1238 (11th Cir. 2008) (emphasis added) (citing *Phillips v. Scientific-Atlanta, Inc.,* 374 F.3d 1015, 1016 (11th Cir. 2004)). The Court must dismiss the action if the complaint fails to meet either of these two pleading requirements. *Druskin v. Answerthink, Inc.,* 299 F. Supp. 2d 1307, 1321 (S.D. Fla. 2004).

As explicated by the Supreme Court, *Tellabs.,* 551 U.S. 308, and a trio of recent Eleventh Circuit cases affirming dismissals with prejudice of private securities class action claims,

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

*Rosenberg v. Gould,* 554 F.3d 962 (11th Cir. 2009); *Mizzaro,* 544 F.3d at 1230; and *Garfield v. NDC Health Corp.,* 466 F.3d 1255 (11th Cir. 2006), the Reform Act mandates dismissal of private securities class actions absent the allegation of specifics facts which raise a "strong," "cogent" and "compelling" inference of scienter,  "at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs,* 551 U.S. at 324.  In this case, the inference that BankUnited and the Defendants, including Mr. Camner, were innocent casualties of a recession is far more compelling than any inference of intentional fraud.

The dictates of the Reform Act contrast markedly with the usual standard under Federal Rule of Civil Procedure 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007).  Securities fraud cases are subject to heightened pleading requirements, under both Federal Rule 9(b) and the Reform Act.  Rule 9(b) provides that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake" Fed. R. Civ. P. 9(b).  Rule 9(b)'s fraud particularity requirement is not met unless a complaint sets forth "(1) precisely what documents or oral representations were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001) (internal citation omitted).

Even beyond the requirements of Rule 9(b), though, the Reform Act intensified Rule 9(b)'s particularity requirement by mandating that a securities fraud action complaint

Coffey Burlington

Office In The Grove, Penthouse   2699 South Bayshore Drive   Miami, Florida 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u-4(b)(1)(B). "The heightened pleading requirements of the [Reform Act] compliment and supplement the requirements for pleading fraud under [Rule] 9(b)." *In re Winn-Dixie Stores, Inc. Sec. Lit.*, 531 F. Supp. 2d 1334, 1342 (M.D. Fla. 2007). Strikingly, as the Eleventh Circuit stated in *Mizzaro, supra,* this standard, although applied at the motion to dismiss stage, is **even more "demanding" than would be required to avoid a motion for summary judgment.** 544 F.3d at 1235, 1239. The Plaintiff has not met in this case its burden of particularized allegations as to falsity, as its Complaint, literally dozens of times, offers only a bare conclusion that statements by BankUnited spokesmen were "false" or "misleading," without the required factual showing of why this is so.

Another critical change in the Reform Act was to provide a safe harbor from liability for "forward-looking statements." *Harris v. Ivax Corp.,* 182 F.3d 799, 803 (11th Cir. 1999); *see* PSLRA § 102(b), 109 Stat. at 754, *codified at* 15 U.S.C. § 78u-5(c)(1). Forward looking statements, even if they prove false, are not actionable as long as they are "accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. § 78u-5(c)(1)(A)(i); *In re Impac Mortgage Holdings, Inc. Sec. Litig.*, 554 F, Supp. 2d 1083, 1094 (C.D. Cal. 2008) (vague optimistic statements not actionable as material misrepresentations).

Significantly, in securities fraud cases such as this one "the court may consider certain other materials, such as documents incorporated by reference into the complaint and matters of which a court may take judicial notice." *Hubbard*, 625 F. Supp. 2d at 1279 (citing *Tellabs*, 551

6

Office In The Grove, Penthouse   2699 South Bayshore Drive   Miami, Florida 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

U.S. 322); *see also Day v. Taylor,* 400 F.3d 1272, 1276 (11th Cir. 2005) (holding district court did not err by considering a contract central to the dispute without converting the motion to a motion for summary judgment); *see also Harris,* (recognizing the incorporation by reference doctrine in a securities case). The Court may judicially notice relevant documents legally required by, and publicly filed with, the Securities and Exchange Commission ("SEC"). *See Bryant,* 187 F. 3d at 1276-81; *Garfield*, 466 F.3d at 1260 n. 2 (SEC documents may be considered on a motion to dismiss); *Harris*, 182 F.3d at 802 n. 2 (the "usual rules for considering 12(b)(6) motions are thus bent to permit consideration of an allegedly fraudulent statement in context.").

Applying these standards here, the Complaint clearly fails to satisfy the applicable pleading requirements and should be dismissed with prejudice.

## THE MAJOR ALLEGATIONS OF THE COMPLAINT FAIL THE TESTS OF PARTICULARITY AND SPECIFICITY

The basic elements of the Complaint, which are present in every attempted class action, are insufficient to state a claim under the Reform Act: events take a more pessimistic turn than forecast by a corporation's key officers; these officers have access to non-public information and financial incentives and rewards from higher stock prices; the corporation's stock price in fact falls.  There is no dispute that this scenario – the very one Congress had in mind under the Reform Act – is insufficient to state a viable claim.   To avoid the fate which it merits and which the Reform Act commands, Plaintiff has embellished the gist of its Complaint (predictions were wrong and stock prices fell) with additional elements of supposedly "false" and "material" statements allegedly made by Mr. Camner and others.   These allegations, however often they may be repeated in a prolix complaint, are in every case insufficient to allege with particularity

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE    2699 SOUTH BAYSHORE DRIVE    MIAMI, FLORIDA 33133
T: 305.858.2900    F: 305.858.5261
Email: info@coffeyburlington.com    www.coffeyburlington.com

falsity or scienter.

The most significant paragraph in the Complaint is its acknowledgement, quoting the OTS hindsight explanation of September 19, 2008 (after the class period ended) in the Complaint at ¶¶ 39, 142: "BankUnited [is] in an **unsatisfactory condition primarily due to the rising delinquencies and defaults in its payment option ARM portfolio. . . . The deterioration in this portfolio has resulted in the need for greater levels of capital and allowances for loan and lease losses at the Bank."** Having acknowledged the reason for the financial problems at BankUnited – defaults by its customers due to the sinking economy and real estate market – the Complaint never alleges with particularity or persuasive force that Mr. Camner or other defendants had special advance knowledge of the "rising delinquencies and defaults" the future would bring. Thus, the Plaintiff's allegation that losses were "inevitable" (e.g., ¶ 34) is a mere conclusion, entitled to no weight. To the contrary, it is obvious that the unprecedented collapse of Florida real estate values, and the accompanying increase in defaults by BankUnited's customers, was anything but inevitable, except in hindsight.

In the same vein, the Complaint alleges repeatedly that the Bank described its underwriting in positive terms, such as "conservative" or "stringent," because of its average loan to value ratio, credit score, use of fully indexed underwriting, historically low charge-offs and appraisal review process. The statements quoted in this regard (e.g., ¶¶ 23, 26, 50, 59, 62, 63, 66, 68, 69, 74, 94, 105, 126), however, are not alleged to be false nor made with scienter with the required particularity. For instance, there is no allegation that the loan to value, credit score and other requirements were not accurately stated by Mr. Camner or others. Nor is there any particularized factual allegation as to why Mr. Camner (or others) did not believe that the Bank's underwriting requirements were sufficient or appropriate. The Complaint uses weasel words in

8

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

alleging that BankUnited did not "fully verify" income, assets and credit (e.g. ¶ 22) or use "proper" scrutiny (¶ 28), without alleging with the required particularity what BankUnited did and did not do; nor what it should have done that would have changed the end result; nor any facts which would support any contention that what was done was not sufficient nor that Mr. Camner believed otherwise than his public statements would indicate.   The Complaint's inconsequential allegations about errors in a handful of individual appraisals, not alleged to be material nor shown to be typical (¶¶ 28-32), also add nothing of consequence: there are individual errors in any enterprise.   The Complaint's allegation that Mr. Camner "liked" the ARM mortgage product (¶ 27) is an allegation of a business judgment, not of fraudulent intent.

Similarly defective are the Complaint's allegations regarding income, capital and loan loss reserves as set forth in the company's financial statements.  While the Complaint alleges in a conclusory fashion that income and capital were "false and misleading" (¶¶ 14, 19, 53, 64, 95) and inserts boilerplate rhetoric to the effect that its financial statements did not comply with GAAP (¶¶ 211-247), the Complaint fails to meet required factually particular allegations of falsity, knowledge or falsity, or scienter as to Mr. Camner.  Loan loss reserves obviously involve prediction of future losses; there is no viable factual allegation of falsity, scienter, or even control over the amount of such reserves.  The fact that Mr. Camner made positive predictions, which were fully consistent with and supported by the Bank's low historical volume of losses, as the Complaint acknowledges (¶¶ 45, 57, 63, 66, 72, 83, 88), fall far short of the particularized and credible showing of fraud required by the Reform Act.  Also unavailing are equally vague allegations of unspecified absences of "internal controls" supported only by an after-the-fact statement as of September 30, 2008, citing departures of knowledgeable accounting personnel after the class period ended (¶ 149).  Further, as regards accounting issues the Complaint defeats

9

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

itself by acknowledging that the Bank's treatment of income for its mortgages was proper under governing accounting rules (¶ 25) and by acknowledging that BankUnited deteriorated, in OTS' judgment, from "well-capitalized" to "adequately capitalized" only in 2008, after the end of the class period (¶ 137, 140).

To fill the gap between the reality of a business failure and the need to allege fraud, the Plaintiffs attempt to rely on the "concerns" raised by bank examiners during a six month examination of the Bank by OTS regulators.  (¶¶ 20, 35, 41, 95).  Examination by regulators, of course, is a recurring event at any bank.  Vague allegations of "close look," "concerns," and "unusual," as applied to the examination in 2008 of a bank with a heavy portfolio of real estate loans, takes Plaintiffs no closer to a showing of falsity or fraudulent intent.  The product of the OTS efforts, as alleged at ¶¶ 141-45, was not a finding of fraud but simply a comment regarding "deterioration in the Bank's real estate portfolio" due to market conditions.  Once again, the Complaint despite itself alleges only that a bank whose business plan focuses on real estate loans will fail in a real estate downturn.  Because the Bank and Mr. Camner disclosed both its business plan and its risks, there is no viable claim for fraud, and certainly none is alleged in this Complaint.

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

### BANKUNITED'S COMPREHENSIVE DISCLOSURES AND
### EXPRESS WARNINGS DURING THE CLASS PERIOD

As emphasized by the Eleventh Circuit in *Harris v. Ivax Corp.,* 182 F.3d 799, 802, n. 2 (11th Cir. 1999), the Reform Act requires "consideration of an allegedly fraudulent statement in context." Here, that context consists of the comprehensive disclosures and express warnings by BankUnited in its voluminous SEC filings during the Class Period.[2]   In this case Plaintiff complains of "risk" and if the risks inherent in the Bank's business plan were disclosed, there can be no viable claim of fraud. The record reveals that BankUnited has repeatedly disclosed the details of its loan portfolio, including its option ARM loans and the risks associated with them, in its voluminous SEC filings during the Class Period.  Given the "context" of these comprehensive disclosures and express warnings by BankUnited, the Plaintiffs' claims are entirely unfounded.

### Disclosures as to Loan Portfolio

BankUnited provided detailed disclosures throughout this period about its Option ARM loan portfolio and the risks its portfolio posed.  There is no dispute that any reader of any BankUnited financial statement would have quickly grasped the Bank's focus on individual home mortgage loans.  Its disclosure as to types of loans was consistent, including well before the class period (*e.g.,* 2005 10-K, at 4-5, 28-30 (MTD 5-6, 32-34; DE 86-4 at 5-6, 32-34) (96% of loans secured by real estate)).  BankUnited repeatedly advised what percentage of its total

---

[2] True and correct copies of these public filings are included in Exhibit 1 to the Motion to Dismiss Consolidated Amended Class Action Complaint filed by Individual Defendants Ortiz and Lopez.  To avoid unnecessary duplication, Defendant Camner incorporates and references that Exhibit.  All citations to these public disclosures shall be to the filing date and page number of the form, including a page cite to the Exhibit's "MTD #" (stamped on the bottom right of each page) and the Court's docket entry number,  in the following form, *e.g.,* 8/9/07 10-Q at 1 (MTD 742; DE 86-11 at 43).

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

loan portfolio Option-ARM loans represented.[3]  It detailed the payment options that these loans provided to borrowers, and how the borrower's selection of a payment "could change the amount of interest collected on a monthly basis and increase the outstanding balance of the loan."  *E.g.,* 2006 10-K at 5 (MTD 369; DE 86-7 at 70); 2007 10-K at 3-4 (MTD 816; DE 86-12 at 18). BankUnited carefully explained how that process of adding deferred interest to the total loan balance resulted in "negative amortization."  *Id.*  Thus, BankUnited emphasized that Option-ARM loans were designed to allow for negative amortization, and that "negative amortization is expected to increase" as the Monthly Treasure Average – the index to which interest rates for option-ARM loans were tied – adjusted upward.  *E.g.,*10/24/06 8-K at 8 (MTD 306; DE 86-7 at 7).   The risks associated with this were comprehensively and repeatedly addressed by BankUnited.

### Disclosures as to Underwriting

Additionally, BankUnited disclosed its underwriting practices for option-ARM loans.  As BankUnited emphasized, the practices were fully consistent with the Interagency Guidelines as ultimately issued by the Federal Agencies including the OCC, the FDIC, and the OTS.[4]  As set forth in the guidelines, a borrower's repayment ability was analyzed at the fully indexed rate.  In other words, before approving a loan, BankUnited would assess whether the borrower was able to repay the full amount of the loan within its term at an interest rate including the maximum

---

[3] *See* 11/2/06 8-K, Investor Presentation at 21 (MTD 338; DE 86-7 at 39); 2006 10-K at 89 (MTD 457; DE 86-8 at 58); 1/22/07 8-K, News Release at 2-3 (MTD 503-04; DE 86-9 at 6-7); 2/7/07 10-Q at 13-14, 31-32 (MTD 525-26, 545-46; DE 86-9 at 28-29, 48-49); 7/26/07 8-K, News Release at 10 (MTD 741; DE 86-11 at 42); 2007 10-K at 49-50 (MTD 862-63; DE 86-12 at 64-65); 5/12/08 8-K, News Release at 3 (MTD 1142; DE 86-15 at 55).

[4] 2/12/08 10-Q at 24 (MTD 1113; DE 86-15 at 26); 5/12/08 8-K, News Release at 3 (MTD 1142; DE 86-15 at 55); 5/12/08 10-Q at 25 (MTD 1206; DE 86-16 at 27).

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

marginal increases in the interest rate that can be added during the term of the loan.  Thus, the borrower's ability to repay is assessed assuming the highest potential interest rates.   As BankUnited also disclosed, its borrowers' average FICO scores were above 709.[5]

Also, from as early as April 2007, BankUnited consistently disclosed the fact that a percentage of its option-ARM loans were issued on a reduced documentation basis.  *E.g.,* 4/18/07 8-K, News Release at 2 & addendum (MTD 659, 665; DE 86-10 at 60, 66).   The percentages of those loans by category of documentation – full documentation, stated income/verified assets, reduced documentation, and no documentation – were fully disclosed by BankUnited throughout 2007 and 2008.[6]   Indeed, in its Form 10-K for the fiscal year ended September 30, 2007, BankUnited specifically identified as a ***"Risk Factor"*** the fact that ***"We grant residential loans under reduced documentation programs, which accounted for 31% of residential loans. . . as of September 30, 2007."***   2007 10-K at 22 (MTD 835; DE 86-12 at 37).  Accordingly, Plaintiffs' central allegation that no such disclosure was made until April of 2008 is patently wrong.

## Disclosures about Exposure to Real Estate Risk

It is also clear that BankUnited repeatedly advised that its loan portfolio was tied to the real estate market, and that negative conditions in that market could significantly impact its financial health.  From the beginning of the Class Period, BankUnited highlighted as a "***Risk***

---

[5] 11/2/06 8-K, Investor Presentation at 24 (MTD 341; DE 86-7 at 42); 2006 10-K at 6 (MTD 370; DE 86-7 at 71); 2/7/07 10-Q at 14 (MTD 526; DE 86-9 at 29); 5/10/07 10-Q at 15 (MTD 684; DE 86-10 at 85); 2007 10-K at 49 (MTD 862; DE 86-12 at 64); 2/12/08 10-Q at 33 (MTD 1122; DE 86-15 at 35); 5/12/08 10-Q at 39 (MTD 1220; DE 86-16 at 41).

[6] *Id.;* 7/26/07 8-K, News Release at 10 (MTD 741; DE 86-11 at 42); 2007 10-K at 50 (MTD 863; DE 86-12 at 65); 2/12/08 10-Q at 33 (MTD 1122; DE 86-15 at 35); 5/12/08 10-Q at 41 (MTD 1222; DE 86-16 at 43).

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

*Factor"* that **"Negative events in certain geographic areas could adversely affect us."** 2006
10-K at 18 (MTD 382; DE 86-7 at 83).  As the Bank explained, "Negative conditions in the real
estate markets where collateral for our . . . loans is located could adversely affect our borrower's
ability to repay and the value of the collateral. . . . **Changes in economic conditions could cause
an increase in delinquencies and non-performing assets, including loan charge-offs, and
depress our income and growth."** *Id.* BankUnited emphasized its particular exposure to the
Florida real estate market, specifying that most of its loans "are secured by properties in
Florida." *Id.*

From the Fall of 2006, BankUnited specifically cautioned about potential declines in the
market.  Its Form 10-K for the fiscal year ended September 30, 2006 stated – in bold font – that
"**The residential-mortgage-origination business is a cyclical industry, has recently been at
its highest levels ever and may decline, which could reduce the number of loans we
originate and could adversely impact our business."** BankUnited warned of "periods of
shrinking volumes and industry-wide losses." *Id.*

<u>**Disclosures as to Loan Loss Reserves**</u>

In light of these concerns about the real estate market, BankUnited consistently disclosed
in its public filings that its earnings could be reduced by inadequate allowances for loan losses.[7]
On a quarterly basis, BankUnited took allowances for prospective loan losses, which it deducted
from its income in that period.  The allowances were approved by BankUnited's accountants,

---

[7] 2006 10-K at 17 (MTD 381; DE 86-7 at 82); 2/7/07 10-Q at 24 (MTD 537; DE 86-9 at 40);
5/10/07 10-Q at 24-25 (MTD 693-94; DE 86-10 at 94-95); 8/9/07 10-Q at 25 (MTD 767; DE 86-
11 at 68); 2007 10-K at 39, 58 (MTD 852, 871; DE 86-12 at 54, 73); 2/12/08 10-Q at 26 (MTD
1115; DE 86-15 at 28); 5/12/08 10-Q at 58 (MTD 1240; DE 86-16 at 61).

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

PricewaterhouseCoopers LLP.[8]  The method for computing the allowances was disclosed in the Bank's Form 10-Q's and 10-K's.[9]  And, BankUnited emphasized that an inadequate allowance for loan losses was one of the significant ***"Risk Factors"*** affecting the Bank's net income.

> We are exposed to the risk that our customer will be unable to repay their loans according to their terms and that any collateral securing the repayment of their loans will not be sufficient to assure full repayment.  Credit losses are inherent in the lending business and could have a material adverse effect on our operating results and our ability to meet our obligations.

> If our evaluation is incorrect and borrower defaults cause losses exceeding our allowance for loan losses, our earnings could be significantly and adversely affected.  We cannot assure you that our allowance will be adequate to cover loan losses inherent in our portfolio.

2007 10-K at 17-18 (MTD 830-31; DE 86-12 at 32-33).

As BankUnited carefully explained, moreover, these allowances reflected management's estimate of the probable losses in the loan portfolio.

> The allowance for loan losses is a subjective judgment that management must make regarding the loan portfolio, and is established and maintained at levels that management believes are adequate to cover probable losses resulting from the inability of borrowers to make required payments on loans.

---

[8] Nor does the Complaint allege that the OTS raised any issue regarding the amount of allowances.

[9] The determination of the allowance was based on a complex, multi-factor evaluation of the collectability of the Bank's loan portfolio.  The factors include "risk characteristics of various classifications of loans; previous loan loss experience; specific loans that have loss potential; delinquency trends; estimated fair market value of the collateral; current economic conditions; the views of our regulators; and geographic and industry loan concentrations."  2007 10-K at 17, 39 (MTD 830, 852; DE 86-12 at 32, 54); *see* 2/7/07 10-Q at 24 (MTD 537; DE 86-9 at 40); 5/10/07 10-Q at 24-25 (MTD 693-94; DE 86-10 at 94-95); 8/9/07 10-Q at 25 (MTD 767; DE 86-11 at 68); 2/12/08 10-Q at 25 (MTD 1114; DE 86-15 at 27); 5/12/08 10-Q at 27 (MTD 1208; DE 86-16 at 29).

15

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

BankUnited expressly warned that, "Since the calculation of appropriate loan loss allowances relies on management's estimates and judgments relating to inherently uncertain events, actual results may differ from these estimates."[10]

As the real estate market continued to deteriorate over the course of the 20 months comprising the Class Period, BankUnited's warnings intensified.  Thus, in a January 2007 News Release, Mr. Camner tempered the announcement of a record quarterly net income by remarking that "our industry is experiencing a cyclical downturn, particularly in the housing markets, which will cause decreasing asset production and rising levels of non-performing assets."  1/22/07 8-K, News Release at 1 (MTD 502; DE 86-9 at 5).  Mr. Camner advised that "we expect the level of non-performing assets to increase."  *Id.*  Again, in its 10-Q issued February 7, 2007, BankUnited emphasized that its net interest income, "the most significant component of its net income, is subject to substantial volatility due to changes in interest rates or market yield curves."  5/10/07 10-Q at 35 (MTD 704; DE 86-11 at 5).

In its 10-Q filed on May 10, 2007 for the quarterly period ended March 31, 2007, BankUnited reiterated the previously disclosed **"RISK FACTORS."**  Emphasizing that "***Changes in economic conditions could cause an increase in delinquencies and non-performing assets, including loan charge-offs, and depress our income and growth,***" the Bank noted that

- borrowers may not be able to repay their loans;

---

[10] 2007 10-K at 17, 39 (MTD 830, 852; DE 86-12 at 32, 54); *see* 2/7/07 10-Q at 24 (MTD 537; DE 86-9 at 40); 5/10/07 10-Q at 24-25 (MTD 693-94; DE 86-10 at 94-95); 8/9/07 10-Q at 25 (MTD 767; DE 86-11 at 68); 2/12/08 10-Q at 25 (MTD 1114; DE 86-15 at 27); 5/12/08 10-Q at 27 (MTD 1208; DE 86-16 at 29).

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

- the value of the collateral securing BankUnited's loans to borrowers may decline; and

- the quality of BankUnited's loan portfolio may decline.

Any of the latter four scenarios could cause an increase in delinquencies and non-performing assets or require Bank United to charge-off a percentage of its loans and/or increase its provision for loan losses, which would reduce its income.

5/10/07 10-Q at 42 (MTD 711; DE 86-11 at 12).

In July 2007, in light of those "challenging" market conditions and its expectation that "non-performing assets will increase", BankUnited increased its quarterly loan loss provisions to $4.4 million, a nearly four-fold increase compared to the prior year. 7/26/07 8-K, News Release at 3 (MTD 733; DE 86-11 at 34). This is exactly the response one would expect of any bank with a plenitude of real estate loans. BankUnited warned, though, that "economic events such as tighter credit standards or liquidity issues of borrowers, if prolonged, may require changes to these estimates." 8/9/07 10-Q at 24 (MTD 766; DE 86-11 at 67).

Two months later, in an October 23, 2007 News Release, BankUnited announced another substantial increase in its quarterly loan loss provision to $19.1 million. Although the Bank's net income for the 2007 Fiscal Year exceeded $81 million, Mr. Camner explained the Bank's decision significantly to increase reserves: "It is clear that this difficult economic climate will continue. There is significant volatility in the markets, the housing sector is still in a downturn, and non-performing assets have not yet leveled off." "Looking ahead," he further emphasized that the "environment will continue to be challenging" and that "we will focus on managing delinquencies in our mortgage portfolio." 10/23/07 8-K, News Release at 2 (MTD 804; DE 86-12 at 6).

17

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

BankUnited's Form 10-K for the fiscal year ended September 30, 2007 continued to address the future in highly cautionary terms. The Bank detailed 38 different **"Risk Factors"** that could substantially and negatively impact the Bank's performance, including the following:

> *Continuation of current market conditions could adversely impact our business.*
>
> *Changes in economic conditions could cause an increase in delinquencies and non-performing assets, including loan charge-offs, and depress our income and growth.*
>
> *An inadequate allowance for loan losses would reduce our earnings.*
>
> *We may need additional capital resources in the future and these capital resources may not be available when needed or at all.*
>
> *Negative events in certain geographic areas could adversely affect our results.*
>
> *Adverse market condition in Florida could adversely impact us.*

2007 10-K at 16-28 (MTD 829-841; DE 86-12 at 31-43). Based on its analysis of these factors, and "in consideration of industry trends and continued difficulty in the housing markets, particularly in regions impacted by housing price decreases," management explained that "[w]e anticipate that we may take larger provisions for loan losses during the coming year." *Id.* at 37. Thus, in no uncertain terms, BankUnited declared that "The overall level of non-performing assets is expected to increase in fiscal 2008," and that "provisions for loan losses may be made at higher levels during fiscal 2008 than in prior years." *Id.* at 53, 58.

As predicted, in January 2008, the Bank announced that it had recorded a $65 million provision for loan losses for the quarter ended December 31, 2007. Mr. Camner explained, that "[t]he extraordinary deterioration of the housing and mortgage markets and overall instability in the economy continue to impact financial services companies and we do not anticipate a recovery of the housing market in the near term." Looking forward, moreover, Mr. Camner

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

specifically warned of the Bank's "anticipation of rising non-performing assets" and the possibility that the Bank "may determine to raise additional capital should conditions call for it." 1/24/08 8-K, New Release at 1 (MTD 1021; DE 86-14 at 31).

Indeed, in its Form 10-Q issued in February 2008, for the period ended December 31, 2007, BankUnited advised that "Relief from the impact of current market conditions will likely not come in any material way until housing prices have reached a bottom. We do not anticipate that is likely to happen for the next 18 to 24 months at best. . . . [W]e anticipate the environment will continue to be challenging." 2/12/08 10-Q at 25 (MTD 1114; DE 86-15 at 27).

As predicted by BankUnited, the second quarter of fiscal year 2008 proved to be similarly "difficult and disappointing". Thus, in a May 12, 2008 Press Release, the Bank reported a quarterly loss of $65.8 million, and a provision for loan losses of $94 million. Remarking that the "[c]urrent market conditions, the slumping economy and weakness in the housing markets continue to impact our results," Mr. Camner advised that "[w]e may require future additional provisions as we work our way through this economic cycle." 5/12/08 8-K, News Release at 1 (MTD 1140; DE 86-15 at 53).

By June 2008, the close of the Class Period, impact of these risk factors about which the Bank had been repeatedly warning resulted in agreements between the Bank and the OTS to address certain concerns. *See* 8/25/08 10-Q at 24. Just as Mr. Camner had advised in early 2008, the measures included efforts to seek to raise additional capital. *Id.* Given BankUnited's ongoing and repeated warnings throughout the Class Period, no investor could legitimately have been surprised about this development.

Given this context of full and repeated disclosure, Plaintiffs have not stated, and cannot state, a claim for relief under the heightened standards mandated by the Reform Act.

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE    2699 SOUTH BAYSHORE DRIVE    MIAMI, FLORIDA 33133
T: 305.858.2900    F: 305.858.5261
Email: info@coffeyburlington.com    www.coffeyburlington.com

## THE ALLEGED STATEMENTS ARE
## WITHIN THE REFORM ACT'S SAFE HARBOR

As the Eleventh Circuit has emphasized, a critical change in the Reform Act was to provide a safe harbor from liability for "forward-looking statements." *Harris v. Ivax Corp.,* 182 F.3d 799, 803 (11th Cir. 1999); *see* PSLRA § 102(b), 109 Stat. at 754, *codified at* 15 U.S.C. § 78u-5(c)(1); *see also Theoharous v. Fong*, 256 F. 3d 1219, 1226 (11th Cir. 2001) (affirming dismissal of complaint against executive based on forward looking statement of future economic performance). Thus, the *Harris* Court explained that

> In that safe harbor, corporations and individual defendants may avoid liability for forward-looking statements that prove false if the statement is "accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." [15 U.S.C. § 78u-5(c)(1)(A)(i).] Even if the forward-looking statement has no accompanying cautionary language, the plaintiff must prove that the defendant made the statement with "actual knowledge" that it was "false or misleading." [15 U.S.C. 78u-5(c)(1)(B).]

The Plaintiffs, however, seek to skirt this fundamental provision through a single paragraph buried at the end of their hundred-plus page long Complaint. Thus, in paragraph 253 of the Complaint, Plaintiffs contend that the safe harbor "does not apply to any of the allegedly false statements pleaded in this Complaint." Plaintiffs claim, in a blanket allegation, that the alleged statements were not identified as forward-looking statements, no meaningful cautionary statements were included, or that the speaker knew the statement was false.

Plaintiffs' position, however, is utterly belied by the express provisions contained in virtually every statement on which the Complaint relies. Indeed, the October 24, 2006 press release that, according to Plaintiffs, marks the beginning of the Class Period, contains a detailed cautionary statement, which clearly satisfies the requirements of the safe harbor:

C OFFEY B URLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

<u>Forward-Looking Statements</u>

This press release may contain certain forward-looking statements, which are based on management's expectations regarding factors that may impact the company's earnings and performance in future periods.  Words and phrases such as: "will likely result," "expect," "will continue," "anticipate," "estimate," "project," "believe," "intend," "should," "would," "may," "can," "could," "plan," "target" and similar expressions are intended to identify "forward-looking statements."  Actual results or performance could differ from those implied or contemplated by such statements.  Factors that could cause future results and performance to vary materially from current management expectations include, but are not limited to, general business and economic conditions; fiscal and monetary policies; significant weather events such as hurricanes; war and terrorism; changes in interest rates; deposit flows; loan demand and real estate values; competition with other providers of financial products and services; the issuance or redemption of additional company equity or debt; volatility in the market price of our common stock; changes in accounting principles, policies or guidelines; changes in laws or regulation; reliance on other companies for products and services; and other economic, competitive, servicing capacity, governmental, regulatory and technological factors affecting the company's operations, pricing, products and delivery of services.

10/24/06 8-K (MTD 309; DE 86-7 at 10).  The Investor Presentation attached to BankUnited's November 2, 2006 Form 8-K included a similar cautionary statement in large-font type on its initial page (MTD 319; DE 86-7 at 20), as does each and every SEC filing made by BankUnited during the Class Period, as referenced in the case.[11]  For example, the Form 10-K for the fiscal year ended September 30, 2007, provides as follows:

-------

[11] *E.g.,* 2006 10-K at 3 (MTD 367; DE 86-7 at 68); 1/22/07 8-K (MTD 505-06; DE 86-9 at 8-9); 2/07/07 10-Q at 23 (MTD 536; DE 86-9 at 39); 2/26/07 8-K, Investor Presentation at 1 (MTD 567; DE 86-9 at 70); 4/18/07 8-K at 7 (MTD 664; DE 86-10 at 65); 5/10/07 10-Q at 23 (MTD 692; DE 86-10 at 93); 7/13/07 8-K (MTD 725-26; DE 86-11 at 26-27); 7/26/07 8-K at 6 (MTD 736; DE 86-11 at 37); 8/9/07 10-Q at 23 (MTD 765; DE 86-11 at 66); 10/3/07 8-K (MTD 798; DE 86-11 at 99); 10/23/07 8-K, News Release at 6 (MTD 808; DE 86-12 at 10); 2007 10-K at 1 (MTD 814; DE 86-12 at 116); 1/24/08 8-K, News Release at 6 (MTD 1026; DE 86-14 at 36); 2/12/08 10-Q at 23 (MTD 1112; DE 86-15 at 25); 5/12/08 8-K, News Release at 6 (MTD 1145-46; DE 86-15 at 58-59); 5/12/08 10-Q at 23 (MTD 1204; DE 86-16 at 25); 6/4/08 8-K, Investor Presentation at 1 (MTD 1262; DE 86-16 at 83).

C OFFEY  B URLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

## Forward-Looking Statements

This Annual Report on Form 10-K contains forward-looking statements. Such forward-looking statements are within the meaning of that term in Section 27A of the Securities Act of 1933, as amended (the "Securities Act"), and Section 21E of the Securities Exchange Act of 1934, as amended (the "Exchange Act"). Words and phrases such as: "will likely result," "expect," "will continue," "anticipate," "estimate," "project," "believe," "intend," "will," "should," "would," "could," "may," "can," "plan," "target," and similar expressions are intended to identify "forward-looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995. Forward-looking statements may include, but are not limited to, discussions concerning:

- Projections of revenues, expenses, income, earnings per share, margin, asset growth, loan production, deposit growth, and other performance measures;

- Expansion of operations, including branch openings, entrance into new markets, development of products and services; and

- Discussions on the outlook of the economy, competition, regulation, taxation, company strategies, subsidiaries, investment risk, and policies.

Actual results or performance could differ from those implied or contemplated by forward-looking statements. BankUnited Financial Corporation, a Florida corporation, and its subsidiaries ("BankUnited"), wish to caution readers not to place undue reliance on any forward-looking statements, which speak only as of the date made, and are not historical facts or guarantees of future performance. Forward-looking statements are subject to certain risks and uncertainties, including, among others: general business and economic conditions, either nationally or regionally; fiscal or monetary policies; significant weather events such as hurricanes; changes or fluctuations in the interest rate environment; a deterioration in credit quality and/or a reduced demand for credit; reduced deposit flows and loan demand; real estate values; competition from other financial service companies in our markets; legislative or regulatory changes, including, among others, changes in accounting standards, guidelines and policies; the issuance or redemption of additional Company debt or equity; the concentration of operations in Florida, if Florida business or economic conditions decline; reliance on other companies for products and services; the impact of war and the threat and impact of terrorism; volatility in the market price of the Company's common stock; and other economic, competitive, servicing capacity, governmental, regulatory and technological factors affecting the Company's operations, price, products and delivery of services. Information in this Annual Report on Form 10-K is as of the dates, and for the periods, indicated BankUnited

22

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE    2699 SOUTH BAYSHORE DRIVE    MIAMI, FLORIDA 33133
T: 305.858.2900    F: 305.858.5261
Email: info@coffeyburlington.com    www.coffeyburlington.com

does not undertake, and specifically disclaims any obligation, to publicly update or revise any forward-looking statements to reflect the occurrence of anticipated or unanticipated events or circumstances after the date of such statements, whether as the result of new information, future events or otherwise.  In light of these risks, uncertainties and assumptions, the forward-looking events discussed in or incorporated by reference into this report might not occur.

2007 10-K at 1 (MTD 814; DE 86-12 at 16).

Additionally, each of the conference calls that Plaintiffs reference in the Complaint as "hosted" by the Defendants began with a specific cautionary statement that "This conference call contains certain forward looking statements which are based on management's expectations regarding factors that may impact the company's earnings and performance in future periods."[12]

---

[12] The statement continues as follows:

> Words and phrases such as will likely result, expect, will continue, anticipate, estimate, project, (unintelligible), impend, should, would, may, and, could, plan, target and similar expressions are intended to identify forward looking statements.
>
> Actual results or performance could differ from those implied or contemplated by such statements.  Factors that could cause future results and performance to very materially from current management expectations include, but not limited to, general business and economic conditions, fiscal and monetary policies, events beyond our control including natural disasters and significant weather and events such as hurricanes, war and terrorism, changes in interest rates, deposit lows, loan demand, and real estate values, competition with other providers of financial products and services, the issuance or redemption of additional company equity or debt, volatility in the market price of our common stock, changes in accounting principles, policies or guidelines, changes in laws or regulations, reliance on other companies for products and services and other economic competitive servicing capacity, governmental, regulatory and technical factors affecting the company's operations, pricing, products and delivery of services.

See Transcripts of Conference Call of 10/24/06 at 1 (MTD 1367; DE 86-18 at 1); 1/22/07 at 1-2 (MTD 1383-84; DE 86-18 at 17-18); 4/19/07 at 1-2 (MTD 1428-29; DE 86-18 at 62-63); 7/26/07 at 1-2 (MTD 1466-67; DE 86-19 at 1-2); 10/23/07 at 1 (MTD 1518; DE 86-19 at 53); 1/24/08 at 2 (MTD 1541-42; DE 86-19 at 76-77); 5/12/08 at 1-2 (MTD 1567-68; DE 86-20 at 2-3); 8/8/08 at 1 (MTD 1589-90; DE 86-20 at 24-25).

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

The inclusion of this meaningful cautionary language clearly protects Defendant Camner from liability under the Reform Act's safe harbor.[13]   *Ehlert v. Singer,* 245 F.3d 1313, 1317-19 (11th Cir. 2001)(dismissal of fraud claim affirmed where forward looking statements were accompanied by parallel cautionary language to that used here).   Under the express provisions of the Reform Act's safe harbor, therefore, Plaintiffs' allegations are legally insufficient to state a claim.   On this basis alone, the Complaint must be dismissed with prejudice.

### FRAUD IS NOT PLED WITH ADEQUATE SPECIFICITY

The Complaint utterly fails to satisfy the strict pleading requirements of the Reform Act or Rule 9(b).   It is devoid of particularized facts alleging specific false or misleading statements by *each* Defendant, including Mr. Camner.   And the allegations wholly fail to demonstrate why the numerous statements quoted are false or misleading or that Mr. Camner believed it is so.   The allegations of scienter are likewise defective.

### Defective Allegations of Falsity

While the Complaint intones in a conclusory fashion that the statements of BankUnited and its officers were false, it has not met its burden of alleging with the required particularity how this was so.   The Plaintiffs have committed the same error which led to dismissal with prejudice in the case against Capital One and its officers in *Nolte v. Capital One Financial Corp.,* 390 F.3d 311 (4th Cir. 2004).   In the *Capital One* case, like this one, plaintiffs sought to spin a class action securities fraud case out of allegations that the Bank's loan loss reserves and capitalization were insufficient and that the Bank was "under investigation" by banking

---

[13] Nor has the plaintiff come close to proving – let alone alleging – that Defendant Camner made any statements with "actual knowledge" that they were "false or misleading," as would be required even if the explicit cautionary language could be ignored.

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

regulators.  The Court found the allegations fatally insufficient for several reasons and dismissed all fraud claims as a result.  The allegations of opinion on which the complaint was based were insufficient because the complaint did not allege that the opinion expressed was different from the opinion actually held by the speaker.  *Id.,* 390 F.3d at 315-16; *see also In re Credit Acceptance Corp. Sec. Lit'g.*, 50 F. Supp. 2d 662, 679 (E.D. Mich. 1999) (large adjustment to loan loss reserves insufficient to establish scienter).  Second, falsity was not pleaded with requisite particularity, despite ritual references to regulatory "concerns" of the type liberally used by Plaintiffs here.  Finally, the Court also held that GAAP did not require a disclosure of the pendency of 'investigation by Federal Regulators," 390 F.3d at 316-17, and thus that there could be no fraud claim founded on this basis.[14]

Similar defects fatally infect the Plaintiff's claim against Mr. Camner and others.  While the Plaintiffs cite orders issued by the Office of Thrift Supervision in September 2008, after the Class Period terminated (Complaint ¶¶ 141-145), these orders were promptly disclosed, as the Complaint admits (Id. ¶ 146).  In August 2008, Bank United had already disclosed OTS "concerns" about its deteriorating capital position (Id. ¶ 137).  There is no specific allegation that the Company's other statements regarding regulators (such as Defendant Lopez's statement in April 2008 that there were no "understandings," "agreements" or "actions" from regulators, Complaint ¶ 109) were false.

The heart of Plaintiffs' claims is that Defendants failed to disclose BankUnited's exposure to risk on its portfolio of real-estate based option-ARM loans.  In fact, however, BankUnited had repeatedly disclosed the details of this loan portfolio and the risks associated

---

[14] Thus allegations such as ¶ 95 (individual examiners with OTS "getting concerned") have no value.

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

with them.  *See supra* at 11-19.  Given the "context" of these disclosures, the allegations of misrepresentation or omission are entirely unfounded.

Lacking the particularized allegations required by law, the Complaint resorts to conclusory and pejorative terms such as "unlawful strategy," "risky 'Option ARM' mortgages," "reckless, high-risk, limited scrutiny lending," "liar's loans," and "smoke and mirrors accounting."  Compl. ¶¶ 3, 21, 23, 27.  Such bald assertions, however quotable, cannot overcome the absence of the particularized allegations required by the Reform Act.

In fact, the Complaint nowhere alleges which specific loans were unlawful, risky, or reckless, or that Defendant Camner – or any other of the Defendants for that matter – knew that. Nor does the Complaint allege specifically when disclosure was required, or what additional disclosures should have been made.  As the Court held in *Denny v. Barber,* 576 F.2d 465, 469 (2d Cir. 1978), even prior to passage of the Reform Act, without "specification of what loans, at what times, and in what amounts were 'risky' . . . , the simple use of the epithet 'risky' is no better than a 'mere conclusory allegation to the effect that defendant's conduct was fraudulent."

The Complaint's allegations regarding the Bank's "unsafe and unsound" lending practices are similarly deficient.  The Complaint nowhere identifies specific loans allegedly approved through these unsound practices, and contains no allegations of which specific loans defaulted as a result of the allegedly improper practices.  Courts have consistently rejected such generalized attempts to allege fraud by hindsight.  *Elam v. Neidorff*, 544 F. 3d 921, 927 (8th Cir. 2008) (Reform Act designed to end hindsight as a basis for pleading fraud); *see also In re Charles Schwab Corp. Sec. Litig*, 257 F.R.D. 534, (N.D. Cal. 2009) (dismissing claim based on mispricing of assets where complaint only identified 14 out of hundreds or thousands of assets that were mispriced); *Impac Mortgage Holdings,* 554 F, Supp. 2d at 1094 (allegations of "poor

26

**C**OFFEY **B**URLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

judgment, stubbornness, arrogance, and perhaps even incompetence"); *In re Sunstar Securities Healthcare Lit.*, 173 F. Supp. 2d 1315, 1321 (M.D. Fla. 2001) (criticizing claims of "fraud by hindsight").

In this vein, Plaintiffs' allegations of insufficient loan loss reserves are particularly suspect. In short, Plaintiffs claim Defendants should more accurately have predicted the future. *See, e.g., Malin v. XL Capital, Ltd.*, 499 F. Supp. 2d 117, 146, 149 (D. Conn. 2007) (rejecting "fraud by hindsight" with respect statements about accounting practices) (citations omitted); *In re CIT Group, Inc., Sec. Litig.*, 349 F. Supp. 2d 685, 690-91 (S.D.N.Y. 2004) (later revision of reserves "provides absolutely no reasonable basis for concluding that defendants did not think reserves were adequate at the time").

Alleging that Defendants "[o]verstated BankUnited's earnings and net income by failing to adequately reserve for known and/or inevitable loan losses in its Option ARM loan portfolio," Plaintiffs refer in wildly general and non-specific terms to "negatively amortizing Option ARM loans that Defendants knew BankUnited would not and could not ever collect." Cmpl. ¶ 53, subparagraphs a) and b). Again, without any individualized assessment of each specific Defendants' responsibility, Plaintiffs claim that Defendants had and ignored a crystal ball – unavailable to essentially any other financial institution in the World – that foretold the unprecedented extent of losses involving Option ARM loans.[15] *See Credit Acceptance*, 50 F. Supp. 2d at *676 (executives of auto lender not shown to have known in advance that borrowers would default on their car loans and that collateral was inadequate to cover potential defaults).

---

[15] The allegation is also fundamentally inconsistent with the disclosure accompanying virtually every statement made by Defendants regarding the amount of reserves. *See supra* at 14-17 & nn. 7 & 10.

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

Nor can Plaintiffs overcome their lack of specificity by resorting to unfounded accusations like the claim that Defendants engaged in "smoke and mirrors" accounting rules regarding deferred interest.  Cmpl. ¶ 53, subparagraph a).  Indeed, Plaintiffs themselves admit elsewhere in their own Complaint that those practices were "permitted".  Cmpl. ¶ 25.[16]  Utterly lacking in specificity, therefore, the Complaint contains no particularized allegations about what the loss reserves should have been, how the calculations were inappropriate, let alone tying Defendant Camner specifically to the determination of the reserve amounts.  The pleading defects are fundamental, moreover, since each subsequent section of the Complaint – addressing in succession the quarterly periods that make up the Class Period – refers back to these same allegations in paragraph 53, as the purportedly particularized allegations of what is "false and misleading."  *See* Compl. ¶¶ 53-54, 64, 71, 82, 95, 111, and 128.

Nor can Plaintiffs overcome these glaring pleading defects by resort to generalized statements from confidential witnesses.  The courts are "skeptical" of such tactics because of the inherent unreliability of undisclosed witnesses in civil litigation.  *Mizzaro*, 544 F. 3d at 1240.  In *Higginbotham v. Baxter Int'l. Inc.*, the court observed "it is hard to see how information from anonymous sources could be deemed 'compelling' or how we could take account of plausible opposing inferences. Perhaps these confidential sources have axes to grind. Perhaps they are lying. Perhaps they don't even exist."   495 F.3d 753, 757 (7th Cir. 2007) ("[T]here is no 'informer's privilege' in civil litigation.  Concealing names at the complaint stage thus does not

---

[16] Not only was this accounting treatment of deferred interest payments proper and permitted; it was repeatedly disclosed by BankUnited in its SEC filings.  *E.g.,* 2/7/07 10-Q at 28 (MTD 541; DE 86-9 at 44); 5/10/07 10-Q at 28-29 (MTD 697-98; DE 86-10 at 98-99); 8/9/07 10-Q at 28 (MTD 770; DE 86-11 at 71).

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

protect informers from disclosure (and the risk of retaliation); it does nothing but obstruct the judiciary's ability to implement the Reform Act.").

Accordingly, in *Mizzaro*, the Eleventh Circuit concluded "that the weight to be afforded to allegations based on statements proffered by a confidential source depends on the particularity of the allegations made in each case, and confidentiality is one factor that courts may consider." 544 F.3d at 1240. Allegations based on a confidential witness, accordingly, can only be considered if such particularity is provided and "if the complaint otherwise fully describes the foundation or basis of the confidential witness's knowledge, including the position(s) held, the proximity to the offending conduct, and the relevant time frame." *Id.* Thus, where allegations based on confidential witnesses are vague and lack particularity, they are insufficient to survive a motion to dismiss. *See Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1263 (11th Cir. 2006) (allegations based on undisclosed former executive were "vague and difficult to evaluate."); *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 595 F. Supp. 2d 1253, 1267-68 (M.D. Fla. 2009) (holding that confidential witness allegations failed to support the complaint under the heightened pleading standards for securities fraud cases).

Applying these standards here, the confidential statements cannot properly be considered, and dismissal of the Complaint is required.

## SCIENTER NOT ADEQUATELY PLED

To establish scienter, a plaintiff must state with particularity, with respect to *each* alleged false or misleading statement and as to *each* defendant, *facts* giving rise to a strong inference that the defendant made that representation knowingly or with severe recklessness. *See Scientific-Atlanta*, 374 F.3d at 1017-18; *see also* 15 U.S.C.A. § 78u-4(b)(2). In order to establish severe recklessness, a plaintiff must demonstrate not merely simple or even inexcusable negligence, but

29

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it. *See Magna Investment Corp. v. John Does One Through Two Hundred*, 931 F.2d 38, 39 n. 3 (11th Cir. 1991).

In *Tellabs*, the Supreme Court explained that the "strong inference" standard requires something more than allegations "from which, if true, a reasonable person could infer that the defendant acted with the required intent." 551 U.S. at 314. Rather, the Court explained that a court must take into account plausible opposing inferences and that "an inference of scienter must be more than merely plausible or reasonable — it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.*

Plaintiff fails to satisfy the demanding standard for pleading scienter. The Amended Complaint does not even attempt to allege scienter for most of the alleged material misrepresentations and omissions. Rather, Plaintiff makes generalized scienter allegations at the end of the Amended Complaint in a section misleadingly titled "additional scienter allegations." Pleading scienter in this manner is expressly prohibited by *Tellabs,* its progeny, and Eleventh Circuit law, all of which mandate that for each alleged misstatement, there be allegations giving rise to a strong inference of scienter as to each defendant.

As explained above (*see supra* at 8-10, 24-28), there are no particularized facts regarding Defendants' alleged knowledge of: lending practices, the status of each of the problem loans at the time of the alleged misstatement, or the reserves taken for such loans. Nor are there allegations as to each Defendant's role in setting reserves, much less facts indicating that a particular Defendant fraudulently set the reserves for those loans, or knew that the risk

30

Coffey Burlington

Office In The Grove, Penthouse   2699 South Bayshore Drive   Miami, Florida 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

disclosures were inadequate and made statements to the market with the intent to deceive, manipulate or defraud.

The allegations of violations of GAAP and SEC and banking regulations are also insufficient to establish the requisite scienter. *See Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1208 (11th Cir. 2001); *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F. 3d 981, 1001 (9th Cir. 2009) (no indication that executives were aware of alleged problems or GAAP's definitions); *Garfield*, 466 F. 3d at 1263 (complaint's "allegations regarding amortization and capitalization are vague and difficult to evaluate"); *In re American Business Financial Services, Inc. Sec. Litig.*, 413 F. Supp. 2d 378, 391 (E.D. Pa. 2005) (rejecting vague allegations that lender avoided loan delinquencies by rolling past due amounts of loans were rolled back into the loans and that forbearances and deferrals of loan payments were abused); *Fidel v. Rampell*, No. 02-61258-CIV, 2005 WL 5587454, at *4 (S.D. Fla. March 29, 2005) (confirming that GAAP violations alone do not constitute severe recklessness — "a complaint must specifically state how the delinquent write-offs somehow went beyond a bad business decision or negligence, and instead actually constituted fraud"); *In re Sportsline.com Sec. Litig.*, 366 F. Supp. 2d 1159, 1165 (S.D. Fla. 2004) ("Without any additional evidence of scienter, a defendant's failure to follow GAAP or publication of inaccurate accounting figures, is insufficient to state a claim for securities fraud."); *Anderson v. First Security Corp.*, 249 F. supp. 2d 1256, 1263-64 (D. Utah 2002) (dismissing securities fraud claim based on vague allegations that CEO knew loan charge-offs were unstated or executives knew that loans should be written off); *In re Smith Gardner Sec. Litig.*, 214 F. Supp. 2d 1291, 1302 (S.D. Fla. 2002) ("Violations of GAAP, without more, may establish negligence but do not establish scienter under Rule 10b-5 and the Reform Act."); *In re Sunterra Corp. Sec. Litig.*, 199 F. Supp. 2d 1308, 1324 and 29 (M.D. Fla. 2002) (no

31

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

showing executives were aware of delinquent receivables, doubtful accounts or accounting procedures); *Credit Acceptance Corp.*, 50 F. Supp. 2d at 680 ("As a general rule, GAAP violations or accounting errors, standing alone, do not give rise to scienter"). The fact that BankUnited's auditor gave a clean opinion as to its financials, actually supports the inference that the financial judgments were proper and undermines any inference of scienter**.** *See XL Capital*, 499 F. Supp. 2d at 148-49; *see also Druskin v. Answerthink*, 299 F. Supp. 2d 1307, 1327 n. 27 (S.D. Fla. 2004) ("fact that auditors gave a clean opinion . . . raises an inference that AnswerThink was properly reserving for bad debt and that the reserves were appropriate").

Moreover, in addition to lacking the requisite particularity, almost all of the scienter allegations are attributed to insufficiently identified confidential sources. As explained by Chief Judge Easterbrook in *Higginbotham*: "One upshot of the approach that *Tellabs* announced is that we must discount allegations that the complaint attributes to five confidential witnesses. . . It is hard to see how information from anonymous sources could be deemed compelling or how we could take account of plausible opposing inferences. Usually that discount will be steep." 495 F.3d at 756-57 (internal quotations omitted); *Druskin*, 299 F. Supp. 2d at 1334 (finding that unsubstantiated beliefs and conclusory statements of former employees lack requisite specificity and indicia of reliability to satisfy scienter requirement); *Zucco Partners*, 552 F. 3d at 996 (rejecting confidential witnesses not in the position to know the information alleged, relying on unreliable hearsay, and making conclusory assertions of scienter)

The references to insider transactions by Mr. Camner also do not establish scienter, but to the contrary, further undermine the Plaintiffs' claims. Noting that "a substantial portion of Camner's personal wealth was tied up in BankUnited stock," Plaintiffs allege that "Camner was highly motivated to generate short-term growth" to increase his executive compensation, but at

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

the risk of the Company's long-term financial condition.  Cmpl. ¶ 77.  That theory is utterly inconsistent and makes no sense.  The reasonable inference is that an executive with "a substantial portion of [his] personal wealth . . . tied up in BankUnited stock" would be interested in maximizing the long-term value of his holdings.  Indeed, the Amended Complaint neglects to mention that the sold shares represented only a small fraction of Camner's holdings, or that Camner exercised options during the class period resulting in a substantial net *increase* in his holdings.  There are multiple reasons why someone would sell part of a large block of stock, such as need for funds or diversification of assets.   As the Courts have emphasized, "insider stock sales are not inherently suspicious."  *In re The Vantive Corp.*, 283 F.3d 1079, 1092-93 (9th Cir. 2002); *Smith Gardner*, 214 F. Supp. 2d at 1304 (noting lack of allegations concerning amount, percentage timing and consistency of stock sales, noting low percentage of holdings sold and stating "there are many reasons why the individual Defendants may have sold the stock."); *Credit Acceptance Corp.*, 50 F. Supp. 2d at 677 (no inference of scienter from sale of small percentage of holdings).  This is particularly true where, as here, Mr. Camner kept a huge stake in BankUnited.  *See Elam*, 544 F. 3d at 928 (stock sales represented only a small portion of each seller's holdings).

In sum, it is beyond question that Plaintiff's allegations do not the create the cogent and compelling inference of fraud required by *Tellabs*, and do nothing to overcome the inference that BankUnited's losses were the consequence of the unprecedented real estate and financial conditions which affected nearly ever financial institution involved in real estate lending.  The Amended Complaint should therefore be dismissed with prejudice.

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

## CONCLUSION

For these reasons, Defendant Camner requests that the Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws be dismissed with prejudice.

Respectfully submitted,

By:  /s/ Kendall B. Coffey
     Kendall Coffey (Fla. Bar #259861)
     e-mail: kcoffey@coffeyburlington.com
     Jeffrey Crockett (Fla. Bar #347401)
     e-mail:  jcrockett@coffeyburlington.com
     Kevin Kaplan (Fla. Bar #933848)
     e-mail: kkaplan@coffeyburlington.com
     COFFEY BURLINGTON
     Office in the Grove
     2699 South Bayshore Drive, PH
     Miami, FL 33133
     Telephone: (305) 858-2900
     Facsimile: (305) 858-5261

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 31, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the Mailing Information for CASE NO.  08-CIV-22572-COOKE/BANDSTRA.   Counsel of record currently identified on the Mailing Information list to receive e-mail notices for this case are served via Notices of Electronic Filing generated by CM/ECF.  Counsel of record who are not on the Mailing Information list to receive e-mail notices for this case have been served via U.S. Mail.

/s/ Kevin C. Kaplan

34