## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 08-CIV-22572-COOKE/BANDSTRA

In re BankUnited Securities Litigation
THIS DOCUMENT RELATES TO ALL ACTIONS

LOUISIANA MUNICIPAL POLICE EMPLOYEES
RETIREMENT SYSTEM AND THE OKLAHOMA
POLICE PENSION AND RETIREMENT SYSTEM,

        Plaintiffs,

-vs-

ALFRED R. CAMNER, RAMIRO A. ORTIZ
and HUMBERTO L. LOPEZ,

        Defendants.

_____/

## ALFRED CAMNER'S REPLY MEMORANDUM
## IN SUPPORT OF MOTION TO DISMISS

Defendant, ALFRED R. CAMNER, pursuant to the Local Rules of this Court, hereby files his Reply Memorandum in support of his Motion to Dismiss (DE 88) the Consolidated Amended Class Action Complaint (DE 67) ("Complaint") and in reply to the Plaintiff's Memorandum in Opposition (DE 90).

### Introduction

In its Opposition, DE 90 ("Opp."), Plaintiff defends its Complaint against the motion to dismiss filed by Defendant Camner and the parallel Motion filed by the remaining Defendants (DE 86).[1] In this effort, Plaintiff ignores the governing legal standards and Eleventh Circuit precedent, and substitutes conclusory labeling for the particularized factual allegations of

---

[1] Camner has adopted the arguments made in that motion and adopts the co-defendants' Reply Memorandum as well.

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

misconduct, falsity and scienter which the law requires.  The Plaintiff concedes, as it must, that the Bank disclosed its focus on home mortgages, option ARMs, and the risks thereof, particularly in a falling real estate market.  Plaintiff also concedes that BankUnited disclosed that its underwriting focused on loan to value and credit score, and that limited documentation loans were used.  The Plaintiffs' contention, at its heart, is that Camner and others committed securities fraud by supposedly failing to state in BankUnited's financial statements and their public statements that their own business judgments were wrong.  Misdiagnosis of the state of the economy, of course, was not unusual in 2007 and 2008.  Plaintiff's hindsight allegations at most provide a weak basis for speculation as to the possible existence of some fraud and fall far short of the "compelling" or "cogent" showing required by the law.  As a result, dismissal of the pending Complaint is appropriate.

## The Demanding Standard

Plaintiff begins its legal arguments by taking a number of positions which are contrary to all known case law applying the governing Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §78u-4 et seq.  Plaintiff contends that *Tellabs Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308 (2007), actually "relaxed" the law so that private securities actions could be easier to pursue, DE 90 at 14; and that normal notice pleading rules continue to apply to private securities claims, DE 90 at 13.  Similarly, Plaintiff ignores Judge Marcus' lucid analysis in *Mizzaro v. Home Depot, Inc.,* 544 F.3d 1230, 1235-1239 (11th Cir. 2008),[2] and tries to contend that the

---

[2] In *Mizzaro,* the Eleventh Circuit went out of its way to make the "notable" statement that under the PSLRA, cases which would survive summary judgment motions, because a reasonable jury "could" find for the plaintiff if the complaint's allegations were true, would not survive motions to dismiss under the PSLRA because they "would" not be likely to do so.  *Mizzaro, supra,* 544 F.3d at 1239, 1247.  Plaintiff may not like it, but this is the law.

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE    2699 SOUTH BAYSHORE DRIVE    MIAMI, FLORIDA 33133
T: 305.858.2900    F: 305.858.5261
Email: info@coffeyburlington.com    www.coffeyburlington.com

standard for upholding a private securities complaint on a motion to dismiss is not more "demanding" and "stringent" than the showing needed to support a summary judgment motion, DE 90 at 14.

The actual law is as stated in the Defendants' motions to dismiss, and as applied in all three Eleventh Circuit cases subsequent to *Tellabs:  Mizzaro, supra* (dismissing class action despite allegations of company-wide scheme to improperly inflate profits with improper chargebacks); *Rosenberg v. Gould,* 554 F.3d 962 (11th Cir. 2009) (dismissal upheld because of lack of particularized factual allegations showing that it was likely that CEO knew of and was responsible for the accounting for his own compensation; allegations of fraud rested only on "speculative and conclusory" allegations); and *Garfield v. NDC Health Corp.,* 466 F.3d 1255 (11th Cir. 2006) (dismissal upheld despite allegations of "channel stuffing" which improperly inflated revenue figures; speculative and conclusory allegations of fraudulent intent ignored).

The Eleventh Circuit is not alone; every circuit has held following the Supreme Court's guidance in *Tellabs* that vague and boilerplate allegations such as those liberally doled out by Plaintiff here are not sufficient to avoid dismissal of private class action securities complaints. *Malin v. XL Capital Ltd.,* 312 Fed.Appx. 400, 2009 WL 481897 (2nd Cir. 2009), *aff'g.* 499 F.Supp.2d 117 (D.Conn. 2007) (class action filed based upon allegation of $1.3 **billion** insufficiency in loss reserves dismissed; generic and conclusory allegation of CW's that problems were "well known" disregarded; complaint did not allege specific facts as to defendants' involvement in loss-reserve-setting process or knowledge at the time; "optimistic statements concerning the future of a company" non-actionable); *South Cherry Street LLC v. Hennessee Group LLC,* 573 F.3d 98 (2nd Cir. 2009) (securities fraud claim based on defendant's recommendation of investment in fraudulent hedge fund dismissed under PSLRA despite

3

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE    2699 SOUTH BAYSHORE DRIVE    MIAMI, FLORIDA 33133
T: 305.858.2900    F: 305.858.5261
Email: info@coffeyburlington.com    www.coffeyburlington.com

allegations of defendant's touting of its "ongoing analysis" and "due diligence process" where there were no particularized allegations of defendant's knowledge of the falsity of any of the statements it made regarding hedge fund when made); *Indiana Elec. Workers Fund v. Shaw Group Inc.,* 537 F.3d 527 (5th Cir. 2008) (scienter standard not met by allegations of GAAP violations and lack of internal controls which defendants must have known about due to their positions in company, despite allegations of "there is nothing in this company that I don't know" and of "pressure" to inflate revenue figures); *In re Hutchinson Technology Securities Litigation,* 536 F.3d 952 (8th Cir. 2008) (no particularized facts supporting allegations of falsity of positive statements made by defendants as to return allowances which ultimately proved too low; vague statements such as we are "well-positioned" for the future held immaterial puffing); *Metzler v. Corinthian Colleges, Inc.,* 540 F.3d 1049 (9th Cir. 2008) (insider sales and allegations of management's general awareness of business held insufficient; "**litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false**" not enough under PSLRA); *In re Ceridian Corp. Securities Litigation,* 542 F.3d 240 (8th Cir. 2008) (admitted GAAP violations and restatements insufficient where there were no "specific allegations in the complaint linking [defendants]" to the violations; inference of negligence or innocent error more compelling); *Ley v. Visteon,* 543 F.3d 801 (6th Cir. 2008) ("statements of corporate optimism" not made with scienter notwithstanding internal acknowledgements that corporation was "barely liquid" and was "not doing well;" company is not required to use negative characterizations and pejorative adjectives; accounting errors and restatements of financial statements insufficient in absence of particularized factual allegations of knowledge of falsity when originally made); *Elam v. Neidorff,* 544 F.3d 921 (8th Cir. 2008) ($9 million underestimate of costs within "core business" of healthcare enterprise insufficient in

4

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE    2699 SOUTH BAYSHORE DRIVE    MIAMI, FLORIDA 33133
T: 305.858.2900    F: 305.858.5261
Email: info@coffeyburlington.com        www.coffeyburlington.com

absence of specific facts indicating that reserve figure was known to be false at the time); *Cozzarelli v. Inspire Pharmaceuticals, Inc.,* 549 F.3d 618 (4th Cir. 2008) (conclusory allegations of fraud and wrongful motive disregarded; task of showing scienter under PSLRA "difficult" without internal documents contradicting defendants' public statements or other similar "smoking gun"); *Zucco Partners LLC v. Digimarc Corp.,* 552 F.3d 981 (9th Cir. 2009) (restatement of inventory figures and allegation by CW that defendant directed him not to write down obsolete inventory to avoid missing "market expectations" held insufficient when inference of innocent intent more compelling); *ECA v. JP Morgan Chase Co.,* 553 F.3d 187, 205-06 (2nd Cir. 2009) (positive statements about company's "risk management" processes, discipline and integrity were puffing and immaterial). These cases apply the actual law as passed by Congress: Plaintiff's version of the PSLRA, which welcomes conclusory "notice" pleadings, which allows for sweeping inferences of fraud from neutral facts and which defers to Plaintiff's conclusory labels, simply does not exist.

A recent district court case, which is persuasive because of the similarity of its allegations to those of Plaintiff's complaint here, is *In re Downey Securities Litigation,* 2009 WL 2767670 (C.D. Cal. Aug. 21, 2009). In *Downey,* a private securities class action complaint based on the insufficiency of loan loss reserves was dismissed with prejudice due the Plaintiff's failure to plead factual detail to support conclusory allegations of fraud regarding the loan loss reserves. The Court disregarded Plaintiff's disparaging characterizations of loan quality in the complaint in the absence of particularized factual showing to support the labels; the Court found an absence of factual allegations supporting any strong inference of scienter by Defendants; the Defendants' signature on Sarbanes-Oxley certifications did not help Plaintiff. The similar complaint in this case is subject to all of the same defects and the result should be the same.

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

## Plaintiff's Factual Allegations Fail to Meet PSLRA Standards

Since the law requires "particularized" allegations of fact to support falsity and scienter, conclusory labels such as "false" or "misleading," "misstated" or "misrepresented" and weasel words of variable meaning such as "risky" vs. "conservative,"  "inevitable losses," "house of cards,"  "smoke and mirrors," "liar's loans" "proper scrutiny," "coverup" and "insufficient" must all be disregarded.  Even in the normal setting where Fed. R. Civ. P. 8 applies, the Supreme Court has recently emphasized its teaching that "labels and conclusions" are to be disregarded in the absence of "sufficient factual matter" to provide a plausible basis for the cause of action alleged.  *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949-50 (2009); s*ee also Durham v. Whitney Information Network, Inc.*, No. 06-CV-00687, 2009, WL 3783375, at *6 (M.D. Fla. Nov. 10, 2009) (applying *Iqbal* in PSLRA context and noting that Plaintiff's conclusions should be disregarded).  As the Supreme Court put it, legal conclusions of a Complaint "are not entitled to the assumption of truth."  *Iqbal* at 1950.  For example, the plaintiff's assertion in *Twombly* that the defendants had entered an "unlawful agreement" was a legal conclusion and was not entitled to the assumption of truth.  *See id.* (citing *Twombly* at 555.)  In *Iqbal,* it was conclusions of "knowledge" and "conspiracy" which were disregarded as "mere assertions which were not entitled to be assumed true", *Iqbal* at 1951; only actual "factual allegations" were entitled to be considered.  In this PSLRA context, where Congress has mandated a particularly demanding standard for upholding complaints, the *Iqbal* analysis should be applied with particular vigor. *See South Cherry Street*, 573 F. 3d at 110 (applying *Iqbal* in PSLRA context and noting that the analysis under the PSLRA is even more demanding than in the usual case applying *Twombly* and *Iqbal*).

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900    F: 305.858.5261
Email: info@coffeyburlington.com    www.coffeyburlington.com

Disregarding the pending Complaint's many conclusory allegations, and generic allegations which apply to all executives of any corporation, the following facts are all that are alleged regarding Defendant Camner:

(1) *Positive Statements about BankUnited's policies:* Camner stated that "credit quality" had been the "hallmark" of BankUnited from the beginning, and the reason for its lower reported loan losses was the Bank's "stricter underwriting" than some other banks (¶23)[3]. Camner commented in a report on the record FY 2006 audited financials that "we've kept an unrelenting focus on credit quality which is evidence[d] in the 16-basis point non-performing asset level"[4] and that the Bank's "stringent credit standards" would "position it well for the future" and that he did not "anticipate" that the Bank's losses would "necessarily" increase (¶45-46). In a similar vein, Camner is alleged to have adopted written statements that the Bank had a "high quality credit culture," did underwriting at the fully-indexed rate (i.e. the maximum possible interest rate on an adjustable loan); had a strict appraisal process involving internal review of outside appraisers; and did not make subprime loans (¶49-50). In January 2008 Camner told analysts that BankUnited's reserves were adequate because of its "low LTV's" (starting at "74%"), FICO (credit scores) of 709;

---

[3] Citations by paragraph are to the numbered paragraphs of the pending Consolidated Amended Class Action Complaint (DE 67).

[4] The Court should consider Mr. Camner's caveat (not cited by Plaintiff) that "**there is no guarantee that BankUnited's low levels of non-performing assets will be sustainable in the future.**" (DE 86-7 page 6, MTD 305). Further, Camner's actual statement regarding being well-positioned for the future was "**our stringent credit standards combined with a strong Florida economy, low unemployment and continued population growth in the markets we serve will position us well for the future.**" (Id.) Taken in context, these are plainly forward looking statements within the safe harbor. (Emphasis added).

7

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE    2699 SOUTH BAYSHORE DRIVE    MIAMI, FLORIDA 33133
T: 305.858.2900    F: 305.858.5261
Email: info@coffeyburlington.com    www.coffeyburlington.com

that BankUnited's portfolio was of "good quality;" and that the Bank's underwriting standards were such that it had turned down "loans that other people made" (¶105). In May 2008 Camner, addressing "disappointing" results, stated that "in proportion to non-performing assets, losses have remained low" and that the Bank remained "well capitalized" by regulatory definition (¶114). Camner also in May 2008 reiterated Bank United's appraisal review process, its underwriting at the "fully indexed rate" and "different approach" than "many" other banks which "we believe that's going to carry us through to a better extent" (¶118; 126).

(2)  *Statement of Corporate Optimism:* Camner predicted in early 2007 that he did not "anticipate" Bank United's level of bad loans to increase beyond the levels in earlier business downturns due to the Bank's "historically conservative credit standards" which the Bank was "continuously tightening." (¶56-57, 63).  Camner stated in April 2007 that the Bank did not "anticipate signficant losses" and that "our reduced documentation loans are counterbalanced by stringent requirements for other underwriting criteria" and that the Bank's experience had been that their performance performed favorably to full documentation loans (¶66, 68).  Camner stated in July 2007 that "we do not expect" losses to be "significantly higher" than "in comparable periods in the past" due to the Bank's "avoidance of subprime lending," experienced personnel, credit quality, underwriting of loans at the fully-indexed rate and avoidance of home equity piggybank lending (¶74-75).  Camner referred to the Bank's loan portfolio as "very strong" in October 2007; the Bank's "capital position" and low charge-offs were "in our favor"; Camner stated that BankUnited's tough appraisal and credit standards meant that BankUnited had less of a problem than

8

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

some of its competitors (¶86, 89-90).  In the same vein, the Complaint alleges that Camner stated in January 2008 that a large increase in loan loss reserves and other actions should "better position" BankUnited for the future[5]; BankUnited should survive the "difficult economic environment;" it had a "strong capital position" per its PWC financial statements; it adhered to "conservative underwriting standards"; and "reduced documentation borrowers undergo a reasonableness test on income" (¶102).

(3) *Sarbanes-Oxley certifications.*  Camner signed Sarbanes-Oxley certifications (¶51; 60; 70; 93; 107; 116).

(4) *Awareness of Regulatory "Concern":* Camner heard that at least one examiner from OTS had "concerns" about BankUnited's option ARM loans and its loan loss reserves in late 2007 or early 2008 (¶20; CW2).  The Complaint further alleges that Camner knew that "regulators were getting concerned" about the concentration of option ARM loans in the summer of 2007 but that Camner still "liked the product" (¶27; 95).

(5) *"Involvement" of Camner in Aspects of BankUnited's business.*  The complaint alleged that Camner as Chief Executive Officer participated in meetings where presentations were made regarding loan loss provisions (¶14) and that Camner "personally got involved" with how the Company "treats delinquencies and how we adjust the rates or foreclosures"[6] (¶57).  Camner is also alleged to have had a

---

[5] Plaintiff does not quote other statements also made by Camner at the time, addressing the shift in focus away from residential markets based on the fact that "we do not anticipate a recovery of the housing market in the near term" (DE 86-14 pages 31-32, MTD 1021-22).  Nor does Plaintiff quote an acknowledgement that conditions might call for additional capital (*id*. at 32, MTD 1022).

[6] Contrary to Plaintiff's self-serving and unwarranted inference (¶166), there is no allegation that Camner ever affected the amount of loan loss reserves on any loan or in the aggregate.

9

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

conversation with an anonymous appraisal reviewer (CW1) to the effect that the reviewer should "cut [appraisals], but not too many" (¶28).[7]

(6) *Capital Registration:* Camner stated in January 2008 that the updating of a shelf capital registration was "not indicative of any near-term transaction" (¶104).[8]

Some of these statements are immaterial statements of optimism; others are future looking predictions within the safe harbor. Others are verifiable statements of fact (loan to value ratio, average credit score, non-performing asset levels and regulatory capital at various times, whether a near-term capital transaction was planned in January 2008). The obvious and fatal defect in all of these allegations in the context of the PSLRA and Rule 9(b) is that **nowhere** are there any **specific** factual allegations showing that **any** of the alleged statements by Defendant Camner were false, or were known to be false, or believed to be false, at the time he made them.

Nor is Camner alleged with any factual particularity to be responsible, much less culpably responsible, for issues such as the amount of loan loss reserves, numbers in financial statements, the specifics of the Bank's underwriting and documentation policies, or the details of disclosure of different loan types and subtypes. *E.g.*, Opp. at 34-41. The absence of specifics mandates dismissal with prejudice as in the Eleventh Circuit's recent *Rosenberg, Mizzaro* and

---

[7] This ambiguous snippet is fully consistent with the honest belief on Camner's part that there should not be "too many" mistakes in the residential appraisals being reviewed; there is no allegation that Camner ever advised even on one immaterial loan that a reviewer should ignore a mistake in an appraisal being reviewed. Plainly, this isolated comment does not support the Plaintiff's leap to the conclusion (¶165) that Camner, the Bank's CEO, was "deeply and personally involved in BankUnited's lending and underwriting practices".

[8] See footnote 5 for the context of this remark. While the record indicates that BankUnited was trying to raise capital during parts of the class period, this is a neutral fact as increased capitalization has many benefits, regulatory and otherwise. In the very document quoted by Plaintiff, Camner acknowledged that it might become necessary to raise additional capital due to the "difficult economic environment" (DE86-14 at 32, MTD 1022).

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE    2699 SOUTH BAYSHORE DRIVE    MIAMI, FLORIDA 33133
T: 305.858.2900    F: 305.858.5261
Email: info@coffeyburlington.com    www.coffeyburlington.com

*Garfield* cases, and others such as *Nolte v. Capital One Financial Corp.,* 390 F. 3d 311 (4th Cir. 2004) (dismissing complaint against based on alleged insufficient loan loss reserves and regulatory concerns where there was no allegation of specific facts supporting fraud by defendants).[9]

### Camner's Stock Sales Do Not Support Fraud or Scienter

Plaintiff alleges that during the class period in October 2006 Camner sold 80,000 shares of BankUnited stock for $2.1 million, and another 100,000 shares for $2.2 million in June 2007, which was larger than his previous sale of $886,000 in earlier 2006 (¶ 197-201). Notwithstanding these sales, Camner maintained an enormous position in BankUnited stock through the class period, as Plaintiff acknowledges (¶189).  In fact, as disclosed in BankUnited's 2008 proxy statement, after the stock sales alleged by Plaintiff, Camner had 1.8 million shares of Class B preferred stock (95% of the total); 3.3 million shares of Class B common stock (98% of the total); and 3.6 million shares of Class A common stock (10% of the total).  Thus, the sales of 180,000 shares over two years represented a sale of less than **one percent** of his massive BankUnited stock holding.  Further, his sales were less than the restricted stock awarded him as compensation in the 2005 and 2006 periods (¶192).

Assuming there were false statements alleged, which there are not, the sale of such a relatively minor percentage, when the amount involved was smaller than the value of restricted stock Camner had been awarded as compensation in recent years, provides no inference of scienter. *E.g., Rosenberg v. Gould,* 554 F.3d 962, 964 (11th Cir. 2009) (dismissing allegations against CEO who sold 38% of his stock for $9 million during class period); *Elam v. Neidorff,*

---

[9] Notably, Plaintiff in its 66-page opposition finds no space to address or distinguish the *Nolte* case, which it fatal to its position.

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE    2699 SOUTH BAYSHORE DRIVE    MIAMI, FLORIDA 33133
T: 305.858.2900    F: 305.858.5261
Email: info@coffeyburlington.com    www.coffeyburlington.com

544 F.3d 921, 928 (8th Cir. 2008) (sales of five percent of holdings not "suspicious"). While suspiciously timed and proportionately significant stock sales may, in a proper case, assist in a strong inference of scienter, *Mizarro,* 544 F.3d at 1253, the Courts have unanimously declined to infer scienter from sales of less than ten percent of holdings, given the many legitimate reasons it would be prudent to liquidate stock for diversification and other purposes. *E.g.*, *Ronconi v. Larkin,* 253 F.3d 423, 435 (9th Cir. 2001) (sales of ten percent not suspicious). In this case, the percentage sale was very modest, and there is nothing suspicious alleged regarding the timing of the sales here, which preceded, for example, the alleged regulatory examination (¶41). To the contrary, in this case Camner's huge stake in BankUnited gives the Court every reason to believe that Camner's interests were harmonized with those of outside shareholders, and that he was acting on his own best business judgment in the interests of both.

## <u>Regulatory "Concerns" Don't Fill the Scienter or Falsity Gap</u>

Plaintiffs try to fill the gaping void of particularized scienter allegations by alleging that Defendants "[c]onceal[ed] from investors the facts that BankUnited was facing questions and criticism from regulators about the Bank's primary lending practices starting in approximately the summer of 2007, and that the Bank was under intense scrutiny from the OTS starting in November 2007 in connection with the 'unsafe and unsound practices' that ultimately caused the Bank to be in an 'unsatisfactory condition' due to the Bank's failures with respect to rising loan defaults, inadequate capital, and inadequate loan loss reserves" (Response at 5-6). Plaintiffs' Hail Mary claim that Defendants violated the securities laws by failing to disclose the Bank's confidential communications with federal regulators fails for several reasons.

First, "questions," "concerns," and "scrutiny" about the Bank's operations are part and parcel of any regulatory examination of the Bank; in a Bank whose business focuses on real

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE    2699 SOUTH BAYSHORE DRIVE    MIAMI, FLORIDA 33133
T: 305.858.2900    F: 305.858.5261
Email: info@coffeyburlington.com    www.coffeyburlington.com

estate loans, inevitably regulators conducting a bank examination in a recession will focus on the risks inherent in such loans (these risks being the very ones BankUnited had disclosed to its investors).  The existence of such "questions" or "concerns" is not material.  *Nolte v. Capital One Financial Corp.,* 390 F. 3d 311, 317-18 (4th Cir. 2004) (no duty to disclose investigation by regulators).  Plaintiffs have not cited a single case in support of their claim that failing to disclose confidential communications with bank regulators can be the basis of a securities fraud claim.[10]

Second, there is a difference between "concerns," scrutiny and comments, on the one hand, and "conclusions" or "findings," on the other, and the latter are not alleged by Plaintiff to have occurred until after the Class Period's end.[11]  Moreover, even the findings eventually made, in September 2008, by consent, three months after the class period ended (Complaint ¶141-45) suggested only, at worst, that regulators (in hindsight) may have disagreed with certain business judgments of the Bank, made earlier in good faith.  Certainly, allegations of regulators'

---

[10] The cases cited by Plaintiff do not help its position.  *Grand Lodge of Pa. v. Peters,* 550 F.Supp.2d 1363 (M.D. Fla. 2008) involved a scheme between a lender and a favored builder which was fraudulently concealed from investors, in which "spec" homes built to be "flipped" by the builder were falsely described as being built for individual buyers.  While certain defendants argued that only one officer was responsible for the admitted fraud, specific facts were alleged to indicate that all were involved.  In this case, by contrast, there is no allegation of such fraud and deception, nor findings of such by any regulators.  *In re Hamilton Bankcorp,* 194 F.Supp.2d 1353, 1358 (S.D.Fla. 2002), involved numerous (criminal) sham transactions to bolster earnings and hide losses (such as schemes to manipulate the balance sheet by selling loans above market value in exchange for buying others above market value).  Regulatory inquiry into these issues was held to be a "red flag" as to fraud for auditors, *id.* at 1359 n.4, a point which is inapposite here, where the issue is business judgment as to loan policy, not fraud.

[11] Plaintiff does not allege when the examination concluded nor when the Bank first learned of any conclusions of the regulators.  The "January 31, 2008" date is the date "as of" which the regulators examined Bank United.  Plaintiff clearly alleges by negative implication that no findings or conclusions were communicated to any Bank United personnel by regulators during the class period. There is no specific factual allegation of the earliest date when any regulatory conclusions were made or communicted to Camner or anyone else at BankUnited.

13

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

"concerns" or "scrutiny" during the (latter part of the) class period do not assist the Plaintiff in alleging fraud by any of the defendants, including Camner.

Third, assuming there were material communications with the OTS, the Bank would be prohibited from disclosing them under the law, including by the OTS's "bank examiner" privilege.  The Code of Federal Regulations provides that all OTS investigative proceedings are confidential.  *See* 12 C.F.R. § 512.3.  Furthermore, the OTS holds the exclusive right to release the confidential record of its investigative proceedings, and banks may not disclose this information without prior consent from the OTS.  *Id.* ("Unless otherwise ordered or permitted by the Office, or required by law, and except as provided in §§ 512.4 and 512.5, the entire record of any investigative proceeding or formal examination proceeding, including the resolution of the Office or its delegate(s) authorizing the proceeding, the transcript of such proceeding, and all documents and information obtained by the designated representative(s) during the course of said proceedings shall be confidential"); *see Overby v. U.S. Fidelity & Guar. Co.*, 224 F.2d 158 (5th Cir. 1955) (privilege from discovery).  In light of these principles, and the settled case law that disclosure of regulatory "investigations" was not required,[12] silence on the subject was prudent, if not compelled, and hardly indicative of fraudulent intent.

---

[12] Plaintifs cite *Folsom v. Indymac Bancorp, Inc.*, Case. No. CV-08-3812-GW (VBKx), slip op. (C.D. Cal. Aug. 31, 2009) (Plts' Ex. 6) which held that it is possible to commit fraud by misquoting regulators. *See Folsom* at 31 ("even if Perry was normally precluded from discussing the OTS investigation, once he speaks, he had an obligation to do so in a non-fraudulent/non-misleading manner").  *Folsom* is a very different case as Plaintiffs here do not allege any specific facts to indicate that any statement by any defendant regarding regulators was false or misleading.

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

### Cases Meeting the PSLRA Standard Do Not Help Plaintiff Here

The Plaintiff cites a number of cases where private securities claims have been upheld, proving only that where securities fraud has occurred, it is possible to allege sufficient facts to obtain a civil remedy.  These cases, however, by the specificity of the allegations which were upheld, only show the extent to which the conclusory averments of Plaintiff in this case are insufficient.  For example, *Hubbard v. BankAtlantic Bankcorp et al,* Case No. 07-61542–civ-Ungaro, survived a motion to dismiss based on specific factual allegations that defendants were fully aware of facts contrary to their public statements, due to, for example, receipt and discussion of "exception reports" showing that the Bank was not followings its purported underwriting standards in the **majority** of **loans** (DE 90-2 at 4-5).  In *Serabian v. Amoskeag Bank Shares, Inc.,* 24 F.3d 357, 364-367 (1st Cir. 1994) (pre-PSLRA case), defendants had received reports from outside consultants, as well as internal reviews indicating that loan reserves were grossly insufficient and inadequate.  While *Serabian* is distinguishable on the facts, it is also a pre-PSLRA case and therefore irrelevant.  In *Countrywide Financial Corp. Derivative Litigation,* 554 F.Supp. 2d 1044, 1051-53 (C.D. Cal. 2008), there was an abundance of specific factual allegations of "pushing through loans without adherence to underwriting standards," mislabeling of loans, "improperly remov[ing] bad loans from the portfolio" and "valuations fluctuating without any basis."  In *21st Century Holding Co. Securities Litigation,* 2008 WL 5749572, at *6-8 (S.D. Fla. 2008), the complaint alleged the specifics of conversations in which defendants privately acknowledged to fellow employees facts contrary to their public statements.  No similar specific factual allegations are contained in Plaintiff's conclusory effort to tar Camner and others in this case.  To the contrary, Plaintiff cites no specific fact, conversation or report which might tend to support or create a compelling or cogent inference

15

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE    2699 SOUTH BAYSHORE DRIVE    MIAMI, FLORIDA 33133
T: 305.858.2900    F: 305.858.5261
Email: info@coffeyburlington.com    www.coffeyburlington.com

that Defendant Camner intended to deceive anyone, or was not relying in good faith on the efforts of internal financial personnel, and, in particular, the very expensive audits of BankUnited's financial statements by Price Waterhouse Coopers.

**Plaintiff Ignores Governing Principles Protecting Forward Looking Statements**

The law provides that where "forward looking statements" are accompanied by "meaningful cautionary language" to the effect that future could be different than as forecast, the statements are absolutely protected, and within a "safe harbor." *Harris v. Ivax Corporation,* 182 F.3d 799, 803 (11th Cir. 1999) (in such cases "the defendants' state of mind is irrelevant"). The same applies to "immaterial" statements, even in the absence of cautionary warnings. *Theoharous v. Fong,* 256 F.3d 1219, 1225 n.6 (11th Cir. 2001). Thus, there can be no claim of fraud based on "puffing" or statements of optimism as to the corporate future such as the erroneous prediction of a stock price rise at issue in *Next Century Communications Corp.,* 318 F.3d 1023, 1027-28 (11th Cir. 2003). Many of the statements by Camner on which Plaintiff travels involve predictions of the future, such as future losses,[13] and "assumptions" regarding the future,[14] which are by statute "forward looking statements" within the protected safe harbor. While a loan loss reserve for a particular loan which (hypothetically) had already suffered a loss above the reserved amount, might be fraudulently misstated, under the rule of *Harris v. Ivax,* 182 F.3d 799, 806 (11th Cir. 1999) (false statements of present fact included within forward looking statements outside of safe harbor), nothing of the type is alleged here. The allegation that the

---

[13] Loan loss reserves are by definition a "projection" of a "financial item" and thus forward looking under 15 U.S.C. §78u-5(i)(1)(A).

[14] All "assumptions" which underlie projections of revenue and loss projections are forward looking by statutory definition. 15 U.S.C. §78u-5(i)(l)(D).

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE    2699 SOUTH BAYSHORE DRIVE    MIAMI, FLORIDA 33133
T: 305.858.2900    F: 305.858.5261
Email: info@coffeyburlington.com    www.coffeyburlington.com

Defendants' crystal ball was not perfect is insufficient for a private securities complaint.

### Dismissal Should be With Prejudice

Plaintiff, despite its footnote 64 alternative request for leave to further amend, has not proffered any new specific factual allegations not already in its current complaint. As a result, dismissal of its complaint should be with prejudice. *Rosenberg,* 554 F.3d at 967 (court properly denied footnote request of type used here with no proffered complaint; a bare footnote request does not properly raise the issue of amendment); *Mizzaro,* 544 F.3d at 1255 (leave to amend properly denied in absence of proffer of facts which would support a valid claim); *Harris v. Ivax,* 182 F.3d at 807-08 (same). Plaintiff's footnote request for leave to amend comes within the rule of the above precedents and should similarly be denied.

### CONCLUSION

For these reasons, the Consolidated Amended Class Action Complaint should be dismissed with prejudice.

Respectfully submitted,

By: /s/ Kendall B. Coffey
    Kendall Coffey (Fla. Bar #259861)
    e-mail: kcoffey@coffeyburlington.com
    Jeffrey Crockett (Fla. Bar #347401)
    e-mail: jcrockett@coffeyburlington.com
    Kevin Kaplan (Fla. Bar #933848)
    e-mail: kkaplan@coffeyburlington.com
    COFFEY BURLINGTON
    Office in the Grove
    2699 South Bayshore Drive, PH
    Miami, FL 33133
    Telephone: (305) 858-2900
    Facsimile: (305) 858-5261

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

**<u>CERTIFICATE OF SERVICE</u>**

**I HEREBY CERTIFY** that on November 30, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the Mailing Information for CASE NO.  08-CIV-22572-COOKE/BANDSTRA.   Counsel of record currently identified on the Mailing Information list to receive e-mail notices for this case are served via Notices of Electronic Filing generated by CM/ECF.  Counsel of record who are not on the Mailing Information list to receive e-mail notices for this case have been served via U.S. Mail.

/s/ Jeffrey B. Crockett

C OFFEY B URLINGTON

OFFICE IN THE GROVE, PENTHOUSE    2699 SOUTH BAYSHORE DRIVE    MIAMI, FLORIDA 33133
T:  305.858.2900    F: 305.858.5261
Email:  info@coffeyburlington.com       www.coffeyburlington.com