# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

## MASTER FILE NO.  08-CIV-22572-COOKE/BANDSTRA

---

IN RE BANKUNITED SECURITIES
LITIGATION

---

THIS DOCUMENT RELATES TO:

ALL ACTIONS

---

## REPLY IN SUPPORT OF DEFENDANTS RAMIRO ORTIZ'S AND
## HUMBERTO LOPEZ'S MOTION TO DISMISS

Defendants Ramiro Ortiz ("Ortiz") and Humberto Lopez ("Lopez") hereby file this their

Reply in Support of their Motion to Dismiss as follows:[1]

## I.     Like the Amended Complaint, the Response Continues to Masquerade Conclusory Allegations as Facts

In the Response, Plaintiffs simply restate the same conclusory allegations made in the

Amended Complaint ("AC"). For example, in the Response, Plaintiffs state:

> As alleged in the Complaint, Defendants' statements concerning the quality of
> BankUnited's borrowers and the Bank's underwriting and appraisal practices
> were false and misleading because Defendants: (1) were aware of considerable
> evidence to the contrary given that Defendants attended weekly management
> meetings where they received information on  loan production, loan losses, and
> other topics relevant to BankUnited's financial position, and that the Defendants
> further received periodic reports on loan risks from the risk management group;
> (2) were aware of OTS' concerns about BankUnited's Option ARM lending since
> the summer of 2007 and the OTS required BankUnited to cease Option ARM
> lending and issuing less than fully documented loans during the Class Period; and
> knew or should have known about pervasive deficiencies in BankUnited's
> appraisal and underwriting practices.

---

[1] Defendants incorporate by reference Alfred Camner's Reply Memorandum in Support of Motion to Dismiss and
Incorporated Memorandum of Law.

Response, p. 45 (emphasis added) (citations omitted).

Again, this supposed explanation consists of no facts whatsoever. The alleged reasons listed by Plaintiffs as to why Defendants' statements were false and misleading are purely conclusory statements. Plaintiffs state that Defendants were aware of "considerable evidence to the contrary" given that they attended management meetings. Under the Private Securities Litigation Reform Act ("PSLRA") and Rule 9(b), Plaintiffs are required to state what that evidence was and how it was contrary to Defendants' statements.[2] Plaintiffs provide no such indications as to what information Defendants received, who provided such information or when it was provided. Furthermore, Plaintiffs state that Defendants were aware of OTS concerns, but do not state what such alleged concerns were, who was informed of these alleged concerns, or when these alleged concerns were raised. The Plaintiffs also fail to specify what constituted the alleged "pervasive deficiencies." These kinds of defects run throughout the AC, and therefore warrant dismissal.

The Plaintiffs must state their allegations and the facts on which such allegations are formed. 15 U.S.C. § 78u-4(b)(1). In their Response, Plaintiffs miss the point - while the Plaintiffs do allege that Defendants' statements were false or misleading (Response, pp. 42, 47), Plaintiffs do not substantiate those allegations with any facts as to how or why Defendants' statements were fraudulent at the time they were made. Case law cited by Plaintiffs in the

---

[2] *Compare Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1265 (11th Cir. 2006) (dismissing complaint for lack particularity where plaintiffs failed to plead "what was said at the meeting, to whom it was said, or in what context") *with In re Catalina Mktg. Corp. Sec. Litig.*, 390 F. Supp.2d 1110, 1114 (M.D. Fla. 2005) (holding allegations to be sufficient to withstand a motion to dismiss where plaintiffs alleged defendants received internal forecasting reports that warned of "impending second quarter 2002 earnings miss" yet defendants claimed in future quarters that rapid growth of the company would continue).

2

Response illustrates this point and indicates the level of factual detail required in securities fraud pleadings, which is absent from Plaintiffs' AC.[3]

Plaintiffs also relied on cases where (unlike their allegations) the alleged fraud was easily ascertainable, and therefore, pleading such fraud did not require the same level of particularity.[4] For example, in *Daou Sys. Inc. Sec. Litig.*, 411 F.3d 1006, 1019 (9th Cir. 2005), the plaintiffs alleged that Daou improperly recognized revenue. The plaintiffs alleged that defendants recognized the revenue for a multi-million dollar contract while such contract was still in the process of being negotiated. In *Daou*, however, such fraud was easy to determine because the revenue from the contract at issue was recognized, and then reported in the company's public filings, but Daou never actually entered into the contract. Similarly, in *Aldridge v. A.T. Cross Corp.*, 284 F. 3d 72, 80 (1st Cir. 2002), the plaintiffs alleged that certain plans for price reductions and takebacks were not disclosed by the company in order to inflate revenue. In *Aldridge*, the defendants publicly <u>admitted</u> after the class period that the

---

[3] *See Folsom v. Indymac Bancorp, Inc., et al.* (Response, Ex. 6), Case No. CV-08-3812-GW (VBKx), slip op. (C.D. Cal. Aug. 31, 2009) ("Arguably, Plaintiffs have developed such an alleged picture [of fraud] here…Plaintiffs have not yet demonstrated sufficiently 'detailed allegations of practices that utterly failed to meet [the] standards' [Defendant] referenced, or at least that [Defendant] had knowledge that the true state of affairs was in direct contrast to his assertions. The Court would suggest the Plaintiffs amend the [complaint] to strengthen the allegations regarding [Defendant's] awareness."); *Dance v. Levitt Corp., et al.* (Response, Ex. 9), No. 08-60111-CIV slip op. (S.D. Fla. Aug. 10, 2009) (ordering plaintiff to identify <u>facts</u> on which the violation of financial covenants allegations were based); *U.S. v. Morris*, 80 F.3d 1151, 1165 (7th Cir. 1996) (stating that the plaintiff did not merely contrast the reserves at issue with the auditor's later recommendations, but the plaintiff pointed to information known to defendant bank management at the time of the allegedly fraudulent statements) (stating further "[t]hat is precisely the sort of internal information the courts look to in assessing whether a statement of opinion or belief in a public document could be considered fraudulent.").

[4] For example, Plaintiffs allege that Defendants fraudulently abused otherwise acceptable GAAP principles (i.e. the recognition of deferred interest as current period revenue). Since the practices themselves are acceptable, it is extremely important that Plaintiffs plead <u>particularized facts that show how</u> Defendants abused GAAP, <u>why</u> their actions were GAAP violations, and <u>how</u> they knew their actions were GAAP violations. *See In re Spectrum Brands Sec. Litig.*, 461 F.Supp.2d 1297, 1309 (N.D. Ga. 2006) (stating that where alleged practice was not fraudulent per se, the requirement that plaintiffs plead with particularity if they choose to assert it as a basis of fraud is particularly compelling).

TEW CARDENAS LLP
Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131-3407 • 305-536-1112

undisclosed price reductions and takebacks were the plan "from the get go."  The *Aldridge*

Court noted that in such a case "there is little need for the type of specificity discussed" in other

cases.[5]  *Id.*    Finally, in *In re Catalina Mktg. Corp. Sec. Litig.*, 390 F. Supp.2d at 1114, the

plaintiffs alleged that the defendants publicly touted the success of their European operations but

failed to disclose the loss of their largest European customer for over a year.  Such fraud is

easily determinable based on comparing the date that the contract was terminated with the date

that the termination of the contract was disclosed.

## II.    The Heightened Pleading Requirements Apply Equally to Alleged Omissions

The Response shifts focus somewhat from the dozens of statements listed in the AC made

by Defendants throughout the Class Period to the statements alleged to be omitted by the

Defendants' during the Class Period.[6]  Specifically, the Response focuses on the alleged scheme

"to mislead investors with respect to the lending practices and financial position of BankUnited,"

or stated differently, Defendants' alleged failure to disclose the true conditions of the Bank.

Response, p. 44.  However, alleged omissions are required to be pled with the same degree of

particularity as alleged fraudulent statements.  *Garfield*, 466 F.3d at 1262 (requiring plaintiffs to

set forth what omissions were made, the person responsible for not making the statement, the

---

[5] The Court was referring to *Greebel v. FTP Software, Inc.*, 194 F.3d 185 (1st Cir. 1999), which dismissed a securities fraud complaint for failure to plead with particularity.  The *Greebel* Court held that the absence of specific identifying information as to the amount and nature of the transactions was indicative of the generality of the allegations of violations of GAAP standards.  Accordingly, Plaintiffs' reliance on *Aldridge* for the proposition that Plaintiffs are not required to provide specific details regarding the Defendants' alleged GAAP violations is without merit.  Response, p. 49.  *Aldridge* did not hold that specific facts do not need to be plead in regards to GAAP violations, but held that less particularity was required in that case due to the defendants' post-class period admissions.

[6] In fact, Plaintiffs seem to concede that some of the statements alleged to be false in the Amended Complaint are, in fact, true.  Response, p. 28 (stating that "Defendants' statements about borrowers' FICO scores and fully indexed rate underwriting may have been literally true…").

4

content of the omission and how the omission misled the plaintiff - the who, what, when, where and how of the omission).

These allegations include that Defendants maintained loss reserves below reasonable levels thereby violating GAAP, concealed escalating threats to capitalization, and that Defendants engaged in reckless lending practices while portraying a different story to the public. Response, pp. 45-48.   Again, sufficient facts are not alleged to support these allegations. Contrary to Plaintiffs' assertions and misapplications of case law (*see supra* note 4), Plaintiffs are required to allege certain factual details related to the GAAP violations, including details as to the amount, when the errors were made, and how the errors affected the stock's value.[7] *Durham v. Whitney Info. Network*, Case No. 06-CV-00687, 2009 WL 3783375, at *11 (M.D. Fla. Nov. 10, 2009) (dismissing complaint where plaintiff made "sweeping allegations that deferred revenues were manipulated"). Using Plaintiffs' allegations regarding loan loss reserves as an example, the AC does not state (even generally) what the loan loss reserves should have been, when the error occurred, how BankUnited improperly calculated such reserves, how such reserves should have been calculated, or how the error regarding the loan loss reserves affected the stock price. Therefore, Plaintiffs have not adequately pled fraud.

Plaintiffs' also allege that Defendants fraudulently concealed the "true" lending practices and financial condition of the Bank from the public. The entire basis for these allegations is Plaintiffs' conclusion that because the OTS was present at the Bank during the Class Period, the OTS examiners must have told Defendants about their conclusions that were eventually reported

---

[7] While it is true that Plaintiffs need not plead in detail each single specific transaction in which Defendant[s] transgressed, by customer, amount, and precise method, the "particular instances of accounting irregularities must be alleged." *In re Premiere Tech., Inc.*, Case No. 1:98-CV-1804-JOF, 2000 WL 33231639, at *17 (N.D. Ga. Dec. 8, 2000).

5

in the Cease and Desist Order issued after the Class Period.[8]  Response, pp. 12, 16-19, 27, 29-30, 40 and 44.  This conclusion is the ultimate example of masquerading conclusions as facts. *Spectrum*, 461 F.Supp.2d at 1310 ("Conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.") (citing to *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).  Plaintiffs never state <u>who</u> was informed by the OTS of relevant information, <u>what</u> information was relayed by the OTS, <u>when</u> or <u>where</u> such information was relayed, and <u>how</u> such information was contrary to any statements of the Defendants.  Accordingly, the Plaintiffs allegations fall far short of adequately pleading securities fraud. *Garfield*, 466 F.3d at 1262.

**III.    Defendants' Forward-Looking Statements Are Not Actionable**

**A.    Plaintiffs' safe harbor analysis is fundamentally flawed because it is contrary to binding Eleventh Circuit Precedent which it fails to distinguish.**

1.    The Eleventh Circuit unequivocally states that a forward-looking statement accompanied by meaningful cautionary language is within the safe harbor <u>regardless of, and without inquiry into, defendant's knowledge of its falsity</u>

In the Eleventh Circuit, "[i]f a [forward-looking] statement is accompanied by 'meaningful cautionary language,' the defendants' state of mind is irrelevant." *Harris v. Ivax Corp.*, 182 F.3d 799, 803 (11th Cir. 1999).[9]  Motion to Dismiss ("MTD"), pp. 13-14 and pp. 15-26.

---

[8] Plaintiffs' rely on this assumption throughout the Response to support allegations of scienter, and as such it will be discussed *infra* in greater detail.  It is addressed here as Plaintiffs argue that the Complaint alleges sufficiently particularized facts "[f]or the reasons described above in the discussion of Defendants' scienter." Response, p. 44.

[9] Plaintiffs maintained that a list was misleading because it failed to state the possibility of a goodwill writedown, and that defendants knew of the need to reduce goodwill. *Harris*, 802 F.3d at 802 and 807, n.10. The Court made this "disjunctive" interpretation of the statute crystal clear by stating,

> The plaintiffs do make a wholly unpersuasive argument that the defendants' knowledge of the need to reduce goodwill robs the projections of their forward-looking status.  The statutory definition of "forward-looking statement" does not refer at all to the defendants' knowledge of the truth or falsity of the statement, however; such knowledge is relevant only to liability in the safe

6

Plaintiffs, ignoring this binding precedent, state the opposite proposition: that a forward-looking statement accompanied by meaningful cautionary language is still actionable if made with actual knowledge by that person that the statement was false or misleading. Response, pp. 55-56. This is not the law in this jurisdiction, and Plaintiffs' citations to conflicting cases from other jurisdictions[10] on this issue are thus inapposite.

Also inapposite are the Florida district court opinions Plaintiffs cited in support. Response, pp. 55-56. Neither *In re Catalina Mktg. Corp. Sec. Litig.*, 390 F.Supp.2d 1110 nor *McBride v. Vision Twenty-One, Inc.*, No. 99Cv138T27F, 2000 WL 33996239 (M.D. Fla. Aug. 21, 2000) addressed meaningful cautionary language. Without such language, actual falsity is the issue, making their statement of the law consistent with Eleventh Circuit precedent. In *Reina v. Tropical Sportswear Int'l.*, No. 8:03-CV-1958-23TGW, 2005 WL 846170, at \*3 (M.D.

---

harbor, and even there only when there is inadequate cautionary language. *See* 15 USC § 78u-5(c), (i).

*Harris*, 182 F.3d at 807 n.10 (11th Cir. 1999). Later, in *Theoharous v. Fong*, 256 F.3d 1219, 1224-1225 (11th Cir. 2001), the Court reiterated and stated,

> [T]he PSLRA shields defendants from liability for forward-looking statements, regardless of defendant's state of mind, if the statements are either (1) identified as...forward-looking statement[s], and accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement[s]," or (2) "immaterial." 15 USC § 78u(c)(1)(A)(i) & (ii).

*Accord, e.g., Marrari v. Med. Staffing Network Holdings, Inc.*, 395 F.Supp.2d 1169, 1188 (S.D. Fla. 2005) (citing *Harris* and applying "actual knowledge" prong only if the forward-looking statement is unaccompanied by meaningful language); *In re Sawtek, Inc. Sec. Litig.*, No. 603CV294ORL31DAB, 2005 WL 24605041, at \*10 (M.D. Fla. 2005) (citing *Harris*, repeating its disjunctive analysis, and characterizing Plaintiffs' assertion as a misstatement of the law); *In re Noven Pharm., Inc. Sec. Litig.*, 238 F.Supp.2d 1315, 1319 and 1321 (S.D. Fla. 2002); *In re Smith Gardner Sec. Litig.*, 214 F.Supp.2d 1291, 1304-1307 (S.D. Fla. 2002).

[10] *See, e.g., In re Seebeyond Tech. Corp. Sec. Litig.*, 266 F.Supp.2d 1150, 1164 and 1165 n.8 (C.D. Cal. 2003) (rejecting as dicta the Ninth Circuit safe harbor interpretation in *Employer-Teamster Joint Council Pension Trust v. Am. West Holding Corp.*, 320 F.3d 920 (9th Cir. 2003) in favor of the *Harris* Court's disjunctive). (The Court then imported a state of mind element into the cautionary language requirement, blurring the distinction between the two prongs and came to a conclusion more consistent with Ninth Circuit precedent than with *Harris*, 266 F.Supp.2d at 1165 n.8). *See also Lormand v. US Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009) (stating Fifth Circuit law); *In re LDK Solar Sec. Litig.*, 584 F.Supp.2d 1230, 1259 (N.D. Cal. 2008) (acknowledging the possibly erroneous statutory construction in *America West*, 320 F.3d 920 (9th Cir. 2003), but declining to certify the question).

7

Fla. Apr. 4, 2005), cautionary language was addressed only within the context of notice inquiry for the statute of limitations on the Securities Act claims. To the extent *Primavera Investors v. Liquidmetal Techs. Inc.*, 403 F.Supp. 1151, 1159 (M.D. Fla. 2005) appears to support Plaintiffs' proposition, it does not rely on Eleventh Circuit precedent (citing instead cases from other jurisdictions) and is in conflict.[11]   The law in this jurisdiction is that a forward-looking statement, accompanied by meaningful cautionary statements, is within the safe harbor and keeps that protection regardless of defendant's knowledge of falsity. MTD, pp. 13-14.

      2.    To determine whether a statement is forward-looking, it must be examined in context but also in piecemeal fashion

As stated in the MTD, pp. 14 and 16, when determining whether a statement is forward-looking, the statement in its entirety must be read in context. *Harris*, 182 F.3d at 805.[12]   In *Harris* this meant, e.g., including the two paragraphs preceding the allegedly false or misleading statement, and examining an allegedly misleading list as one whole statement, without slicing it into separate sentences (as discussed in more detail below). *Harris*, 182 F.3d at 806. This is the framework Defendants used.[13]

---

[11] The court ostensibly directly quotes *Harris* for the same proposition in regard to claims under the Securities Act. A search of *Harris* could not find that quotation on any page. 403 F.Supp.2d at 1156.

[12] "To be sure, the Court does not aggregate all of the alleged statements, which were made at different times, to consider the statements *in toto*. Instead, it reviews each statement 'as a whole' at the time it was made." *Amalgamated Bank v. Coca-Cola Co.*, No. Civ.A. 1:05-CV-1226-, 2006 WL 2818973, at *10 n.8 (N.D. Ga. Sept. 29, 2006) (citations omitted) (viewing section of the prospectus "as a whole" in determining it was forward-looking); *see also In re Unicapital Corp. Sec. Litig.*, 149 F.Supp.2d 1353, 1374 (S.D. Fla. 2001) ("If a review of an entire statement, as opposed to an isolated line or two reveals that it is a mixed statement... the entire statement qualifies as forward-looking for purposes of the PSLRA's safe harbor provision.").

[13] "While the Eleventh Circuit has described the forward-looking statement inquiry as requiring 'piecemeal examination of the statements found in a company communication, *see Harris*, 182 F.2d at 804, the court also pointed out that statements must be read in context." *In re Technical Chem. Sec. Litig.*, No. 98-7334-DIMITROULEAS, 2000 WL 1222025, at *8 (S.D. Fla. July 3, 2000).

8

3.    Statements containing historical or current facts are examined in context and may be forward-looking

Plaintiffs assert, absolutely and without qualification, "Defendants' [m]isrepresentations [a]nd omissions concerned existing and/or historical fact and thus are not forward-looking statements," and "[s]tatements of present or historical fact are not protected by the safe harbor provisions." Response, p. 49 (capitalization changed in first sentence).[14]    Plaintiffs appear to maintain that current or historical facts are always to be plucked out of an otherwise forward-looking statement and denied safe harbor protection,[15] but that is contrary to the binding Eleventh Circuit precedent of *Harris* and *Ehlert* and the statute itself.  This proposition is also illogical because projections or estimates of future performance are always based on historical results.  Context is therefore critical.

The statute defines forward-looking statements as including "any statement of the assumptions underlying or relating to any statement described in subparagraph (A), (B), or (C)." 15 USC § 78u-5(i)(D).  Those underlying assumptions may be statements of current or historical facts, and by definition part of a forward-looking statement. *Harris*, 182 F.3d at 806 (noting that "extrinsic sources of congressional intent point strongly toward treating the entire list as forward-

---

[14] *SEC v. Merchant Capital, LLC*, 483 F.3d 747 (11th Cir. 2007) and *Huddleston v. Herman & MacLean*, 640 F.2d 534 (5th Cir. 1981) are inapposite, because neither was a PSLRA case. The Eleventh Circuit has not cited *Huddleston* in any PSLRA case and as demonstrated, its PSLRA cases do not follow that reasoning. Moreover, this interpretation would appear to be relevant in jurisdictions interpreting the safe harbor rule differently from the Eleventh Circuit, as discussed immediately above.

[15] *See Skubella v. Checkfree Corp.*, No. 1:07-CV-796-TWT, 2008 WL 1902118, at *7  (N.D. Ga. 2008) (citing *Harris*, and stating, "Although the Plaintiff argues that any statements that retrospectively refer to third quarter performance, if made in the context of a forward-looking projection, magically transforms the entire statement into one that is not forward-looking.  Eleventh Circuit precedent appears to have foreclosed that line of argument."); *In re Technical Chem. Sec. Litig.*, 2000 WL 1222025, at *8 ("[T]he Court declines Plaintiffs' invitation to parse out factual statements that, when read in context, do not convey what Plaintiffs assert.").

9

looking," and "[f]orward-looking conclusions often rest both on historical observations and assumptions about future events.").[16]

In *Ehlert v. Singer*, 245 F.3d 1313, at 1315 and 1317 (11th Cir. 2001), the plaintiffs complained that a particular section of the prospectus was misleading because it failed to warn investors that, "at the time the prospectus was issued, Version 8 was no longer being enhanced or upgraded and would be rendered obsolete by Version 9" and argued that "the PSLRA safe-harbor does not apply because the statements at issue 'related to current information' and thus are not 'forward-looking.'" The Court did not agree. Citing *Harris*, the Court treated the entire section of the prospectus as forward-looking and ultimately decided that there was meaningful cautionary language irrespective of the alleged omission of known fact, so the statement was within the PSLRA safe harbor. *Id.* at 1318-19.[17]

In support of their absolute statement of law, Plaintiffs cite various cases holding the *subject matter* of specific historical or current facts to be actionable. Response, pp. 49-50. That proves nothing, however, because in the Eleventh Circuit, the context of those facts is vitally important to whether they are forward-looking and not actionable, as explained above and in the

---

[16] *Harris* itself addressed a mixed list containing both forward-looking statements and not forward-looking statements of present or historical fact. *Harris,* 182 F.3d at 806. The Court held that "when the factors underlying a projection or economic forecast include both assumptions and statements of known fact, and a plaintiff alleges that a material factor is missing, the entire list of factors is treated as a forward-looking statement." *Harris,* 182 F.3d at 806, 807 (emphasis added). Plaintiffs have cited the one sentence from *Harris* that could possibly support their argument, Response p. 49 n.52, but that statement ignores the Court's ultimate reasoning, holding, and subsequent decisions.

[17] *See, e.g., Amalgamated Bank,* 2006 WL 2818973 at *6 (Plaintiffs "argue that, in any event, the statements described above were not forward-looking but instead concerned [defendant's] 'current business conditions.' ... Plaintiff's argument, however, relies on the same logic that was rejected by Eleventh circuit in *Harris.*"); *Barr v. Matria Healthcare, Inc.,* 324 F.Supp.2d 1369, 1381 (N.D. Ga. 2004) ("Thus, statements of present or past observations regarding a company that are made in furtherance of future projections may be protected by the safe harbor."); *In re Smith Gardner Sec. Litig.,* 214 F.Supp.2d at 1291 (deciding that because the press release in question contained a mixture of prognostications and comments on past performance, the entire statement was forward-looking under the PSLRA's safe harbor provision).

10

MTD, pp. 14, 16. Furthermore, integral to these decisions is also a finding there were adequate factual allegations of allegedly false and misleading statements.[18] Assuming *arguendo* that the Plaintiffs alleged only false or misleading statements of current and historical facts would otherwise not fall within the safe harbor (Response, pp. 48-49), they still have failed to plead particular facts indicating whether or how any of these allegedly historical or current facts were indeed false or misleading, *Fong*, 256 F.3d at 1126, as discussed in detail *infra*.

4.   Defendants' forward-looking statements are accompanied by meaningful cautionary language, even if applied to known facts or omitted known facts

Eleventh Circuit precedent conflicts with Plaintiff's unqualified statement that cautionary language by definition cannot be meaningful when applied to already-existing facts. Response, pp. 53-54. As noted above, *Ehlert* determined that there was meaningful cautionary language irrespective of the alleged omission of the known fact that the company already had plans that would render one version of its software obsolete. *Ehlert*, 245 F.3d at 1315.[19]

Plaintiffs' only remaining argument is that the cautionary language is too general. Response, pp. 53-54. Defendants have provided details about the cautionary language in MTD, p. 13 and the Appendix, to show that it is meaningful, but space constraints make it impossible to fully address every allegedly false or misleading statement and all the relevant accompanying

---

[18] *See also In re New Century*, 588 F.Supp.2d 1206, 1225 (C.D. Cal. 2008) (stating that the complaint alleged sufficient facts that the statements were material misrepresentations of loan quality and underwriting); *Primavera*, 403 F.Supp.2d at 1158 (allegations of numerous false and misleading statements were supported with specific facts); *In re Sawtek*, 2005 WL 2465041 at *13 ("The Lead Plaintiffs have failed to provide particular facts to support an inference that any misrepresentations or omissions were made...").

[19] *See also In re Sawtech, Inc. Sec. Litig.*, No. 603CV294ORL31DAB, 2005 WL 24605041, at *11 (M.D. Fla. Oct. 6, 2005) (explaining that plaintiffs' assertion was a misstatement of the law and unsupported by *Sherleigh Assoc., LLC v. Windmere-Durable Holdings, Inc.*, 178 F.Supp.2d 1255 (S.D. Fla. 2000), because if knowing falsity nullified otherwise meaningful cautionary language, the *Sherleigh* court would not have engaged in the analysis of the cautionary language as it did).

TEW CARDENAS LLP
Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131-3407 • 305-536-1112

cautionary language.  Ortiz and Lopez would welcome the opportunity to brief these issues in greater detail, if the Court wishes.  For now, Defendants note that Plaintiffs citations to authority in this section appear only to reiterate their erroneous argument that current or historical facts are never within the safe harbor,[20] and do not dispute the arguments in the Motion to Dismiss.

## B.   Loan loss reserves are forward-looking and within the safe harbor under the PSLRA.

Loan losses reserves are a mixture of future predictions with underlying assumptions based on historical and current fact, and, thus forward-looking for purposes of the PSLRA.  MTD, pp. 18-19.  "No matter what method is used, the economic judgments made in setting loan loss reserves can be validated only at some future date."  *Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 280 (3d Cir. 1992) (not a PSLRA case).   That is often the crux of the Eleventh Circuit's determination that a statement is forward-looking.  *Harris*, 182 F.3d at 805.  ("[A] statement about the state of a company whose truth or falsity is discernible only after it is made necessarily refers only to future performance.").[21]   Plaintiffs have not explained "how a projection for future collections constitutes a false statement of present fact."  *Cole v. Health Mgmt. Assoc., Inc.*, No. 2:07CV00484-FtM-UA-DNF, 2009 WL 2713178, at *8 (M.D. Fla. July 17, 2009).

While arguing the loan loss reserves cannot be forward-looking, the Plaintiffs also ignore their own pleadings indicating the undeniably forward-looking quality of such reserves: "to levels that accurately reflected <u>anticipated</u> losses" (Response, p.27 citing AC, ¶¶ 20 and 166), "to

---

[20] *See infra* note 10 and 12 (distinguishing *Primavera*, 403 F.Supp.2d 1151 and *Huddleston*, 640 F.2d 534).

[21] "While it is true that the *state* of Ivax's 'fundamental business' and 'underlying strategies' is a question of present condition, whether they are intact is a fact only verifiable by seeing how they hold up in the future.  Likewise, whether Ivax is 'well positioned' is a statement whose truth can only be known after seeing how Ivax's future plays out.  That puts this statement in the safe harbor, as well." *Harris*, 182 F.3d at 805.

TEW CARDENAS LLP
Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131-3407 • 305-536-1112

reserve for the <u>reasonably expected</u> losses..., including determining the <u>likelihood</u> of whether a borrower <u>would</u> eventually make <u>future</u> payments..." (Response, p. 37, citing AC, ¶ 25), "the <u>expected</u> income streams ... given the <u>known or reasonably anticipated deficiencies</u>, (Response, p. 37, citing AC, ¶¶ 20, 21, 25, 34, 224-25, 241-42); and "Defendants also failed to take into account the extreme risk with these lending practices by adequately reserving for <u>increasingly likely</u> loan losses."[22] AC, ¶ 33 (emphasis added). [23]

Moreover, the Response states (but Plaintiffs do not cite in the AC) that Lopez wrote in his April 11, 2008 letter to the SEC, "[t]he Company's allowance for loan loss methodology <u>strives</u> to quantify the losses inherent in the loan portfolio at the balance sheet date" and "[t]he <u>expected</u> frequency and severity of loss for our loans in the identified areas are <u>estimated</u> using historical loss rates adjusted for <u>estimated</u> inherent losses in those performing loans at the balance sheet date." Response, p. 52, (emphasis added). As Plaintiffs note, Lopez's statement is consistent with the guidelines cited which also state that it is an <u>estimate</u>. Response, p. 52. While an allowance for loan losses may be intended "to cover probable credit losses that have already been incurred" (Response, pp. 51-52), they nonetheless represent a projection of future losses, making them forward-looking for purposes of the PSLRA. *See* 15 U.S.C. § 78u-5(i)(1)(A).

---

[22] This particular allegation sounds more like corporate mismanagement or simple negligence than a securities fraud claim.

[23] *See also* Response, p. 51-52 (using these phrases indicating the forward-looking nature of the reserves: current judgments about the recoverability; loss is deemed incurred when it is probable; accounting estimate of credit losses; it is [probable] that an asset has been impaired; the amount of loss can be reasonably estimated; it is probable that a creditor will be unable to collect; it must be probable that...).

TEW CARDENAS LLP
Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131-3407 • 305-536-1112

**C.    Even if the allegedly false or misleading forward-looking statements had no accompanying meaningful language, Plaintiffs have failed to plead that Defendants had actual knowledge of the falsity of their statements when made.**

Assuming *argendo* that the accompanying warnings (MTD, p. 13) were insufficient or even non-existent, the forward-looking statements still come within the safe harbor because Plaintiffs have not adequately plead[24] actual knowledge.  It is only at this point in the safe harbor analysis that the defendant's state of mind becomes relevant. *Harris*, 182 F.3d at 803; MTD, pp. 13-14.  The Eleventh Circuit requires Plaintiffs to "allege with particularity facts creating a strong inference that [Defendants] knew the statements to be false." *Fong*, 256 F.3d at 1226.[25]

**D.    Allegedly false or misleading statements that are so vague or general they are incapable of being verified are immaterial and not actionable.**

Immaterial statements, regardless of whether labeled puffery, too vague, too general, opinion, spin etc., are not the types of information on which investors rely (MTD, pp. 22-23), often because their truth or falsity cannot be empirically verified.  *See Next Century Communications Corp. v. Ellis*, 318 F.3d 1023 (11th Cir. 2003).[26]  Defendants maintain that the word "conservative," for example is vague and incapable of verification, whereas the Court can verify the specific factual statements on which Lopez based his opinion: no subprime, no

---

[24] Contrary to Plaintiff's statement, Ortiz and Lopez have not tried to lead this court astray by stating that the word *prove* in the statute referred to the allegations in the Amended Complaint.  MTD, p. 14, n.14 (citing *Harris*, 998 F.Supp. at 1455).  In that case, the plaintiffs had argued that *prove* meant dismissal was inappropriate until they had the opportunity to conduct discovery, but the court noted that the statute and case law made it quite clear that dismissal was required "where the allegations of the complaint fail to give rise to a strong inference of actual knowledge." *Id.  Compare Asher v. Baxter Int'l., Inc.*, No. 02-C-5608, 2005 WL 331572, at *5 (N.D. Ill. Feb. 3, 2005) (cited in Plaintiffs' Response, p. 56 n.60 and although construing *prove* to mean at trial, still requiring plaintiffs to allege sufficient facts to raise a reasonable and strong inference of defendants' actual knowledge).

[25] *See also In re Noven Pharm., Inc. Sec. Litig.*, 238 F.Supp.2d 1315,1321,1324 (S.D. Fla. 2002) (also noting that conclusory allegations do not bolster the alleged facts, which standing alone failed to satisfy the burden of pleading); *Smith Gardner*, 214 F.Supp.2d at 1307.

[26] Defendants acknowledge that this case has been distinguished as not being a federal securities case, (Response, p. 59 n.63), and Defendants made such distinction in the MTD, p. 23 n.2.  Although not binding precedent, the Court's statement was made in regard to an allegedly fraudulent statement and is apt.

14

piggybacks, low LTVs, and high FICO scores. (MTD, p. 23, and, e.g., AC, ¶¶ 58, 69, 105). It seems logical that a reasonable investor would rely on verifiable facts rather than on an unverifiable label.

## IV.   The Complaint Fails to Allege That Defendants Ortiz and Lopez Acted With Scienter

Plaintiffs have devoted nearly half of their Response to an attempt to allege scienter. However, as in the AC, Plaintiffs have simply articulated the principles that apply to a finding of scienter generally without factual support, and have couched their allegations mostly as to the "Defendants" generally and not, as required, as to Ortiz and Lopez specifically. *See* MTD, p. 29; *In re Pegasus Wireless Corp.*, No. 07-81113-CIV, 2009 WL 3055205, at *3 (S.D. Fla. Sept. 21, 2009). Consequently, "[f]or purposes of analyzing wither Plaintiffs have adequately alleged scienter on [Ortiz's and Lopez's] behalf, the only relevant allegations would be those that point to actions or inactions by [Ortiz and Lopez] specifically." *In re Pegasus*, 2009 WL 3055205 at *4. General allegations of scienter unconnected to specific alleged acts or omissions by Ortiz and Lopez specifically will not do.

As set forth in detail below, in their Response Plaintiffs have failed to point to particularized facts alleged in the AC as to each of Ortiz and Lopez, that would support a finding of scienter for each alleged misstatement or omissions alleged at the time of the alleged misstatement or omission. Moreover, because the AC is based upon information and belief, allegations regarding Ortiz and Lopez must also be supported with particularity by "all facts on which that belief is formed." 15 U.S.C. §78U-4(b)(1)(B) and *see* MTD, p. 3. This Plaintiffs have also failed to do.

TEW CARDENAS LLP
Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131-3407 • 305-536-1112

1.    The Cease and Desist Orders and SEC correspondence do not support scienter

With regard to Defendant Lopez,[27] Plaintiffs' argument seems to be this: (1) although the Cease and Desist Orders were not issued until September 19, 2008, long after the end of the class period, these orders are based upon the OTS January 31, 2008 Report of Examination of BankUnited (Response, pp. 17-18); (2) the January 31, 2008 Report of Examination was "during the class period" (Response, p. 20); (3) in his April 11, 2008 response to the SEC, Lopez stated that BankUnited then had no "agreements or understandings written or oral" with the OTS, nor was it "subject to any regulatory actions or received any recommendations" from the OTS (Response, pp. 20-21); (4) on May 5, 2008 BankUnited terminated its payment Option ARM loan program (Response, p. 18); and (5) Plaintiffs therefore conclude that this Response must have been false because by April 11, 2008 Lopez must have been advised by the OTS of various concerns, "none of which was disclosed to the investing public." (Response, p. 19). There are many problems with this argument.

Most importantly, all of Plaintiffs' conclusions rest on their speculation as to the significance of the date in the OTS' "January 31, 2008 Report of Examination." Specifically, Plaintiffs imply (because they have assumed) that the date of this Report means that it was completed on January 31, 2008. Plaintiffs cannot know this to be the case because they do not have the Report of Examination which is protected from public disclosure by federal law. It is essential for Plaintiffs to take this position now in order to further infer that Defendant Lopez would have been aware of its contents at some point soon after January 31, 2008. This position

---

[27] Of the nearly five (5) pages (pp. 16-21) of their Response devoted to this topic, none of it relates specifically to any alleged statement, omission or conduct of Defendant Ortiz. Consequently, it is irrelevant to his scienter. *In re Pegasus*, 2009 WL 3055205 at *4.

16

however, is rank speculation and is also inconsistent with several other allegations in their AC.[28] Perhaps January 31, 2008 was the start date of the examination or, since the examination was of the condition of the Bank, like an audit perhaps January 31, 2008 was the "as of" date with planning activity occurring before that date and actual field work for the examination and report occurring after that date.  Defendants Ortiz and Lopez suggest these other possibilities not (as Plaintiffs have suggested) to create factual issues, but rather to point out that Plaintiffs assertions as to the significance of the January 31, 2008 date on the Examination Report are speculations. So are Plaintiffs' speculations as to when any OTS "concerns" were communicated to Defendant Lopez, and so too are Plaintiffs' speculations as to the date or existence of any agreements between BankUnited and the OTS.[29]

Plaintiffs have not cited particularized facts in the AC to raise a strong inference that Defendant Lopez knew, or was reckless in not knowing, that his April 18, 2008 response to the SEC was false at that time.  Plaintiffs have, at most, raised a suspicion; nothing more.  It is, of course, the nature of Plaintiffs and their counsel to be suspicious of Defendants, but this is not the stuff of securities fraud under the PSLRA.

2.    The Interagency Lending Guidelines are irrelevant to Defendants' scienter

Although in their Response Plaintiffs spend the better part of four (4) pages discussing the so-called Interagency Lending Guidelines (pp. 21-25), they do not so much as mention them

---

[28] For one, in paragraph 174 of the AC Plaintiffs aver that in "February 2008 ... the OTS examination was in full steam...."  For another, in paragraph 20 of the AC they attribute to CW 7 the conclusion that OTS examiners were on site at BankUnited's headquarters "on a daily basis" from November or December 2007 until CW 7 "left BankUnited in May 2008."  The inference from these allegations is that the date of January 31, 2008 does not signify the publication date of the Examination Report because the OTS examination seems to have continued until at least May 2008.

[29] According to the information published on the OTS' website, the earliest dated regulatory action by, and agreement with, the OTS is the July 24, 2008 Memorandum of Understanding.

TEW CARDENAS LLP
Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131-3407 • 305-536-1112

in their AC as a basis of their claims. Plaintiffs certainly do not attribute any statements regarding Interagency Lending Guidelines to Ortiz or Lopez, and of all the paragraphs of the AC cited by Plaintiffs in this section of their Response, the similar words "inter-agency federal guidelines" are used only once and are attributed specifically to Defendant Camner in paragraph 66.[30]

Consequently, because no representations by Defendants Ortiz or Lopez are specifically alleged in the AC regarding Interagency Lending Guidelines, their knowledge of such guidelines and failure to follow them, even if alleged in the AC (which they are not), are irrelevant to any determination of scienter.

3.    The confidential witness ("CW") statements do not establish scienter by Ortiz or Lopez

As set forth at MTD, pp. 29-31, the statements attributed to confidential witnesses in the AC are vague, conclusory and say little if anything specific about Defendants Ortiz or Lopez. In their Response (at pp. 25-28), Plaintiffs do little more than repeat those ineffectual conclusory allegations. What little they do add misrepresents those statements.[31] If these CW's did possess specific, detailed, first-hand knowledge, about Ortiz and Lopez as implied in the Response, why is this specific, detailed, first-hand knowledge not alleged in the AC?

As in the AC, in describing the information allegedly provided by the CW's in the bullet points on pp. 26-27 of the Response, most of the information is ascribed to the "Defendants"

---

[30] Even here Camner's specific alleged statement is that BankUnited had always underwritten its "Option ARM loans at the fully indexed rate, long before the release of the inter-agency federal guidelines." This is a proposition that Plaintiffs do not appear to have seriously challenged.

[31] For example, Plaintiffs characterize these confidential witnesses as "[v]irtually all ... executives with direct first-hand knowledge of Defendants' understanding of BankUnited's underwriting and appraisal policies, lending standards, loan loss reserves, financial statements and communications with the OTS." (Response, p. 26). However, only CW 2 and CW 8 can fairly be described as "executives" based on their descriptions in AC, ¶ 20.

TEW CARDENAS LLP
Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131-3407 • 305-536-1112

generally, and not Ortiz and Lopez specifically. Consequently, these general allegations should not be considered in determining the adequacy of Plaintiffs' pleading of scienter as to Ortiz and Lopez. *In re Pegasus,* 2009 WL 3055205 at *4. The few allegations that Plaintiffs represent as CW statements against Ortiz or Lopez specifically, in fact, do no such thing. One such statement, in the third bullet point on p. 26 of the Response, states that "Defendants Camner and Ortiz were particularly interested in pushing the use of Option ARM loans at BankUnited...." The supposed CW support for this statement is AC, ¶¶ 20, 27. Paragraph 20 of the AC contains no such allegation as to Ortiz. It is surprising then that AC, ¶ 27 alleges:

> Confidential Witness 2 confirmed that Defendants Camner and Ortiz were particularly interested pushing the use of Option ARM loans at BankUnited, stating, "the truth is the ex-Chairman [Camner] liked the product and didn't want diversification [away from Option ARMs]."

Clearly, the quoted statement attributed to CW 2 does not refer to Ortiz at all. The statement in AC, ¶ 27 that Ortiz was "interested in pushing the use of Option ARM loans" is revealed to be pleading sleight-of-hand. In fact this statement is, like most of the AC, Plaintiffs' belief unsupported by any fact, much less particularized facts as required.

The only other supposed CW statement that purports to directly relate to Defendants Ortiz or Lopez is in the second bullet point on p. 27 of the Response which states:

> • Unusual numbers of OTS were onsite at BankUnited's Coral Gables headquarters on a daily basis from approximately November 2007 through May 2008 (¶¶ 20, 35), and met frequently with Defendants Camner and Lopez. ¶ 41.

In fact, the allegation that OTS examiners "met frequently" with Camner and Lopez in AC, ¶ 41 is not attributed to any CW, but is just another one of Plaintiffs' beliefs unsupported by a CW statement or any other fact. None of the remaining supposed CW statements relate specifically

19

to Ortiz or Lopez, but even many of those statements are misrepresented.[32]   Consequently, the CW statements advanced by Plaintiffs in the AC, even if they sufficiently describe the foundation for their knowledge (which is doubtful), simply do not set forth any particularized facts to establish scienter by Ortiz or Lopez.[33]

       4.    Plaintiffs' speculations regarding BankUnited's efforts to raise capital

On pp. 29-30 of their Response, Plaintiffs have concocted a timeline purporting to show that material facts about BankUnited's efforts to raise capital were fraudulently concealed. Plaintiffs allege that although BankUnited announced on August 25, 2008 that they had agreed with the OTS to raise $400 million in additional capital, that "Defendants knew BankUnited's capitalization was in jeopardy" as early as April 2007.  Response, p. 30.  Plaintiffs come to this conclusion by stacking one speculation on top of another, and my making sinister inferences from neutral facts, such as that BankUnited successfully raised $178.5 million in an over subscribed offering of HIMEDS securities in April, 2007.  This they follow with the fact that BankUnited filed a shelf registration for $400 million in securities on January 2, 2008 combined with the now familiar speculation that the OTS examination concluded on January 31, 2008 Response, p. 29.  From all this Plaintiffs speculate that the OTS must have told BankUnited to raise $400 million in new capital at some time during the class period.  *Id.*

---

[32] For example, the statement in the first bullet point on p. 26 of the Response that BankUnited was "pushing large volumes of Option ARM loans to risky borrowers without verifying their creditworthiness" is not supported by any CW statements. Likewise, in the fourth bullet point on that page, the statements attributed to one appraiser in one office in California, CW 1, does not support Plaintiffs' assertion of a "corporate culture."

[33] *See In re Downey Sec. Litig.*, No. CV 08-3261-JFW (RZx), 2009 WL 2767670 at *9-11 (C.D. Cal. Aug. 21, 2009); *In re Pegasus,* 2009 WL 3055205 at *4-6; *Durgin v. Mon*, No. 06-61844-CIV, 2009 WL 3055216 at *12 (S.D. Fla. Sept. 21, 2009).

TEW CARDENAS LLP
Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131-3407 • 305-536-1112

There are, of course, no facts alleged in the AC, or cited to in Plaintiffs' Response, that in any way specifically connect Ortiz or Lopez to this supposed concealment. No facts are alleged to show a knowing or recklessly false statement by Ortiz or Lopez in this regard, from confidential witnesses or otherwise. In short, Plaintiffs have failed to allege facts with particularity to give rise to a strong inference of scienter by Ortiz and Lopez as to BankUnited's capital raising efforts at the times alleged. *Phillips v. Scientific Atlanta, Inc.*, 374 F.3d 1015, 1017-18 (11th Cir. 2004); *In re Pegasus*, 2009 WL 3055205 at *6.

5. The Defendants' high ranking positions in BankUnited does not support scienter

Plaintiffs have argued in this section of their Response that, in effect, all of the Defendants must have known about the alleged fraud because of their high ranking positions in BankUnited. Response, p. 30. This argument has been rejected in this district. *See Durgin v. Mon*, 2009 WL 3055216 at *12 and cases cited therein.[34]

6. Defendants' executive compensation does not support scienter

As set forth at MTD, pp. 33-34, Plaintiffs' allegations regarding the incentive compensation of Ortiz and Lopez are neutral with regard to their scienter. Indeed most of this section is devoted to discussing Camner's stock sales. Interestingly, Plaintiffs acknowledge that Ortiz and Lopez also had substantial holdings in BankUnited stock, but neither of them is alleged to have sold a single share during the class period. What is even more interesting is that "any inference of scienter is negated by the complete lack of stock sales by the Individual Defendants

---

[34] *Primavera*, 403 F.Supp. at 1158, cited by Plaintiffs at p. 32 of the Response is inapposite. In *Primavera*, unlike here, the allegations of the Amended Complaint contained specific and detailed facts, based on personal knowledge of witnesses, establishing the actual knowledge of falsity by each executive Defendant. Likewise, the facts in *In re Countrywide Fin. Corp. Derivative Litig.*, 554 F.Supp.2d 1044 (C.D. Cal. 2008) cited in n.32 of the Response are vastly different than those alleged in the Amended Complaint, including $850 million in stock sales by the Individual Defendants during the class period, and numerous detailed accounts from witnesses showing direct knowledge and participation by the Individual Defendants in intentional and widespread deviations from underwriting standards in violation of company policies. *Id.* at 1058-59.

21

during the class period." *In re Downey Sec. Litig.*, 2009 WL 2767670 at *14. Consequently, the inference of scienter of Ortiz and Lopez, if any, from Plaintiffs' collection of conclusions and speculations is negated by the fact that neither Ortiz nor Lopez sold <u>any</u> of the BankUnited stock they owned during the class period.

7.     Plaintiffs' allegations regarding supposed GAAP violations do not support scienter

As set forth at MTD, pp. 11-12, Plaintiffs have not plead any GAAP violations with the required factual particularity. *Durham*, 2009 WL 3783375 at *11-13. In their Response, Plaintiffs continue their practice of stating principles without connecting them to any facts or to Ortiz or Lopez specifically, or stating facts without connecting them to any legal requirements. For example, Plaintiffs cite *Schultz v. Applica, Inc.*, 488 F.Supp.2d 1219, 1225 (S.D. Fla. 2007), for the list of "red flags" which, if accompanying GAAP violations, would render those GAAP violations supportive of any inference of scienter.[35] Response, p. 34. However, rather than supporting Plaintiffs' scienter argument, *Schultz* demonstrates precisely why Plaintiffs' arguments must fail.

In *Schultz*, Plaintiffs sued Applica, its CEO, CFO and president of a division that made products called Tide Buzz and Home Café. *Id.* at 1221. Financial statements reflecting revenue from sales of these products were alleged to be false in that revenue was improperly recognized and inventory was not timely written off; both were GAAP violations. *Id.* at 1221-23. Plaintiffs alleged that revenue for sales of Home Café were improperly recognized because of unusually high returns and to do so violated the company's internal policy for revenue recognition. Plaintiffs also alleged that the CEO knew this at the time of his alleged misstatements because he

---

[35] Plaintiffs also assert that they have demonstrated the existence of each of these red flags, but even a cursory reading of the discussion in the Response that follows this assertion reveals that they have not.

Tew Cardenas LLP

Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131-3407 • 305-536-1112

was "directly confronted by well-positioned Applica employees about problems with the Home Café which contributed to an inability to reasonably estimate product returns." *Id.* at 1225. Thus, the court found that this combination of factors supported a strong inference as to the CEO, as to his positive statements relating to Applica's revenues. The court, however, found no such inference applicable to the CFO and division president's statements because Plaintiffs did <u>not</u> allege with particularity that these Defendants "were directly informed of product defects such that they knew or should have known that their statements were deceptive or likely to mislead investors at the time they were made." *Id.* at 1227. The court also found that Plaintiffs' "conclusory allegations that these Defendants knew or recklessly disregarded the falsity of their statements or omissions based on their positions in the corporation is insufficient to meet the heightened pleading standards for scienter." *Id.* (citations omitted).

Further, the court in *Schultz* found that the other alleged GAAP violation, the failure to write down inventory, <u>did not</u> support scienter as to any of the Defendants. This is because the Defendants' knowledge of slow sales of Tide Buzz, which was disclosed to investors, did not equate to knowledge of future sales and that, as Applica's own policy stated, the valuation of inventory "'requires significant judgment from management as to the saleability of its inventory based on forecasted sales.'" *Id.* at 1226.

Here Plaintiffs have concluded that BankUnited's principal GAAP violation was a failure to take appropriate loan loss reserves. Response, p. 37. However, even assuming that statements about these loan loss reserves were not projected by the PSLRA safe harbor as forward looking (*see* MTD, pp. 18-19 for why they are), Plaintiffs have not alleged in the AC any facts regarding these loan loss reserves with particularity. Plaintiffs have not alleged why any of the loan loss

23

reserves released were allegedly understated (i.e., what factors management should have considered and didn't); the magnitude of the any of the alleged understatements; that any loan loss reserve calculation violated BankUnited's internal policy for calculating loan loss reserves; and that Ortiz and/or Lopez were aware of facts from which they knew or recklessly disregarded the false or deceptive nature of their statements about loan loss reserves (which involve significant management judgment) at the time they were made.

Plaintiffs two other alleged GAAP violations, failure to disclose risk layering in the Option ARM portfolio (Response, pp. 34-36) and alleged defective internal controls and false SOX certifications, fare no better under this same analysis. Plaintiffs' argument concerning risk layering is confounding. This section of the Response cites to no GAAP provision that requires any difference in accounting for Option ARM loans depending on the type of documentation used at origination. Yet Plaintiffs characterize the accounting for these loans as "improper" for this reason (Response, p. 36). Plaintiffs also complain that details about the breakdown in the type of loan documentation should have been made about each subclassification of the residential loan portfolio rather than as to the residential loan portfolio as a whole. The first problem with this argument is, of course, GAAP has nothing to do with what information should be disclosed to investors in public filings. The second problem is that Plaintiffs have failed to allege any other legal basis for requiring such disclosure.[36]

Plaintiffs' internal controls and SOX argument is equally confounding. Nowhere in the AC do Plaintiffs allege that Lopez[37] had knowledge of any facts at any time that he signed any

---

[36] The portion of the 2006 Interagency Guidelines cited at p. 36 of the Response is not GAAP and, in any event, relates only to the reporting of information to management.

TEW CARDENAS LLP
Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131-3407 • 305-536-1112

SOX certification which would have indicated to him that his statements concerning internal controls were false or deceptive when made.

8.    Plaintiffs' allegations are a classic example of fraud by hindsight

Plaintiffs state, on p. 42 of their Response, that the basis of their claims "is that Defendants each knew at the time they made their statements about BankUnited's conservative underwriting and capitalization and at the time they failed to disclose the risk layering on BankUnited's Option ARM portfolio, that those statements were false and misleading." (emphasis in original).  This is Plaintiffs' oft stated belief, but this belief is not supported by particularized facts as required.   In fact, the cases cited by Plaintiffs in their Response demonstrate the kind of factual detail that is necessary to state a securities fraud claim under the PSLRA, but which are missing from the AC.

Here Plaintiffs have cited to a September 19, 2008 Cease and Desist Order and an August 25, 2008 8K to infer much earlier knowledge of the contents of these documents by "Defendants."  Plaintiffs cite no facts, however, indicating that Ortiz or Lopez specifically were aware of these adverse facts contemporaneously with any statement made by them.[38]

Consequently, Plaintiffs' citation to post-class period disclosures add nothing to their scienter argument.

WHEREFORE, the MTD should be granted.

---

[37] Presumably this section does not apply to Ortiz as he never signed a SOX certification and no other statement concerning internal controls is attributed to him by Plaintiffs.

[38] See In re Catalina Mktg. Corp. Sec. Litig., 390 F.Supp.2d at 1114-15 ("Evidence of contemporaneous statements praising the success of Catalina U.K. while simultaneously failing to disclose the loss of its largest contract") (cited at Response, p. 42); see also Lormand, 565 F.3d at 254 (In exhibits to the complaint, plaintiff provided "numerous contemporaneous documents, such as internal emails and memos, that support a strong inference that the defendants had a wrongful state of mind at the time of their representations ... [as well as] admissions from the defendants themselves regarding their state of mind at the time of their representations (as found in the defendants' post-class period testimony and emails).") (cited in Response, p. 20).

25

Respectfully submitted,

**TEW CARDENAS LLP**
*Attorneys for Ortiz and Lopez*
Four Seasons Tower
1441 Brickell Avenue, 15th Floor
Miami, Florida 33131
Telephone:  305.536.1112
Facsimile:  305.536.1116


By:   /s/ Dennis A. Nowak
      DENNIS A. NOWAK
      Florida Bar No. 328979
      C. THOMAS TEW
      Florida Bar No.098160
      JESSICA FRANK
      Florida Bar No. 0055839


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically this 30th day of November, 2009 with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List via e-mail and U.S. mail, either via transmission of Notices of Electronic Filing generated by CM/ECF or via U.S. mail to for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


                         /s/ Dennis A. Nowak


534994.1

*In re BankUnited Securities Litigation*

Case No. 08-CIV-22572-COOKE/BANDSTRA (S.D. Fla.)

### SERVICE LIST

Michael J. Pucillo, Esq.
mpucillo@bermandevalerio.com
Wendy H. Zoberman, Esq.
wzoberman@bermandevalerio.com
BERMAN DeVALERIO
4280 Professional Center Drive, Suite 350
Palm Beach Gardens, FL 33410
Tel:    561/835-9400
Fax:    561/835-0322

*Lead Counsel for Lead Plaintiffs Louisiana*
*Municipal Police Employees*
*Retirement System and Oklahoma Police*
*Pension & Retirement System*

Glen DeValerio, Esq.
gdevalerio@bermandevalerio.com
Leslie R. Stern, Esq.
lstern@bermanesq.com
BERMAN DeVALERIO
One Liberty Square
Boston, MA 02109
Tel:    617/542-8300
Fax:    617/542-1194

*Lead Counsel for Lead Plaintiffs Louisiana*
*Municipal Police Employees*
*Retirement System and Oklahoma Police*
*Pension & Retirement System*

Jack Reise, Esq.
jreise@csgrr.com
Paul J. Geller, Esq.
pgeller@csgrr.com
Douglas Scott Wilens, Esq.
dwilens@csgrr.com
COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Tel:    561/750-3000
Fax:    561/750-3364

*Attorneys for Plaintiff Waterford*
*Township General Employees Retirement*
*System and Movant The Pension &*
*Annuity Funds*

Martin D. Chitwood, Esq.
mchitwood@chitwoodlaw.com
Ze'Eva K. Banks, Esq.
zbanks@chitwoodlaw.com
Robert W. Killorin, Esq.
rkillorin@chitwoodlaw.com
James M. Wilson, Jr., Esq.
jwilson@chitwoodlaw.com
CHITWOOD HARLEY HARNES LLP
1230 Peachtree Street NE
Promenade II, Suite 2300
Atlanta, GA 30309
Tel:    303/873-3900

*Attorneys for Movant Georgia Municipal*
*Employee Benefit System Retirement Fund*

525608.1

Ryon M. McCabe, Esq.
Rmccabe@mccaberabin.com
McCABE RABIN, P.A.
1601 Forum Place, Suite 301
West Palm Beach, FL 33401
Tel:    561/659-7878
Fax:    561/242-4848

*Attorneys for Movant The New Jersey Building Laborers Pension and Annuity Funds*

Jeffrey Miles Ostrow, Esq.
Ostrow@thkolaw.com
THE KOPELOWITZ & OSTROW FIRM, P.A.
200 S.W. 1st Ave., 1th Floor
Ft. Lauderdale, FL 33301
Tel:    954/525-4100
Fax:    954/525-4300

*Attorneys for Movant Georgia Municipal Employee Benefit System Retirement Fund*

Maya Susan Saxena, Esq.
Msaxena@saxenawhite.com
SAXENA WHITE P.A.
2424 N. Federal Highway, Suite 257
Boca Raton, FL 33431
Tel:    561/394-3399
Fax:    561/394-3382

*Attorneys for Movant The City of Tulsa Municipal Employees Retirement Plan*

Kendall Coffey, Esq.
Kcoffey@coffeyburlington.com
Jeffrey B. Crockett, Esq.
jcrockett@coffeyburlington.com
Kevin C. Kaplan, Esq.
Kkaplan@coffeyburlington.com
COFFEY BURLINGTON
2699 Bayshore Drive, PH
Miami, FL 33133
Tel:    305/858-2900
Fax:    305/858-5261

*Attorney for Defendant Alfred R. Camner*

Dennis A. Nowak, Esq.
Dn@tewlaw.com
C. Thomas Tew, Esq.
Tt@tewlaw.com
Jessica R. Frank, Esq.
Jfrank@tewlaw.com
TEW CARDENAS LLP
Four Seasons Tower
1441 Brickell Avenue, 15th Floor
Miami, FL 33131
Tel:    305/536-1112
Fax:    305/536-1116

*Attorneys for Defendants Ramiro Ortiz and Humberto Lopez*

525608.1